## COGHLAN *v.* STETSON.

*(Circuit Court, S. D. New York.* March 17, 1884.)

1. CONTRACT—RULES OF INTERPRETATION.
    Where a contract is ambiguous, contradictory, or obscure in its language, and is capable of two interpretations, it must be given that construction which inclines most nearly to justice and common sense.

2. SAME—ESTOPPEL.
    Where an actor is employed by a manager who agrees that the actor shall appear at least seven times a week and be paid $100 for each appearance, which stipulation the manager violates by failing to provide employment for the actor for a period of three weeks, the actor waives none of his rights by subsequently appearing under the contract and receiving pay pursuant to its provisions.

3. SAME—IMPLIED AGREEMENT.
    Where an employe agrees to work during a definite period for a stipulated sum, and enters upon the discharge of his duties under the contract, and renders services which are accepted by the employer, the law implies an agreement upon the part of the latter to furnish employment to the servant and pay for it as stipulated in the agreement.

4. PLEADING—AMENDMENT.
    Amendments will be allowed to correct errors in pleading when the opposite party is not misled and substantial justice so requires. It is not the policy of modern procedure to defeat a party who has a meritorious cause of action because he has not declared in the right form.

Trial by the Court.

*Olin, Rives & Montgomery,* for plaintiff.

*A. J. Dittenhoefer,* for defendant.

COXE, J. On the thirty-first day of August, 1883, the parties to this action executed the following contract:

"This agreement, made and entered into this thirty-first day of August, in the year of our Lord one thousand eight hundred and eighty-three, by and between John Stetson of Boston, in the county of Suffolk and commonwealth of Massachusetts, manager of Fifth Avenue Theater of New York, of the first part, and Charles F. Coghlan, of London, England, of second part; witnesseth, that the said party of the second part contracts that he shall give his professional services as leading man of the Fifth Avenue Theater, New

York, in such dramatic performances as shall be given in said theater, also in such theater in cities in the United States and Canada as said party of first part may direct for a season beginning October 8, 1883, and ending Saturday evening, May 3, 1884. It is understood and agreed that when said party of second part shall play in any theater outside of New York, he shall have his name featured on all printing and advertisements, and be recognized as the stock star of said Fifth Avenue Theater Company. Said party of second part agrees to furnish all his costumes and to pay his own fare and expenses to New York. Said party of first part agrees to pay railroad fares for party of second part, including sleeping cars and transportation of luggage, should party of second part be required to play in any other theater outside of New York during this engagement. Said party of the second part agrees to report for rehearsal in New York, on or before Monday, September 24, 1883, and be in readiness to perform Monday, October 8, 1883. It is understood and agreed that seven performances each week shall constitute a week's business, but wherever it is customary in theaters to give more than that number, said party of second part shall give that number of representations. Said party of the first part shall have the selections of the plays to be presented at each entertainment, in which party of second part shall appear. Said party of first part agrees to pay party of second part the sum of one hundred dollars ($100) for each performance in which he shall appear, settlement to be made on the regular salary day of the theater. Said party of second part agrees that he will not perform in any theater in the United States or Canada till this contract shall have been faithfully fulfilled.

"In witness whereof, we have hereunto set our hands and seal.

"JOHN STETSON.                [L. s.]

"CHARLES F. COGHLAN.          [L. s.]

"It is further understood that said Stetson can continue this contract for six weeks by giving said Coghlan notice to that effect on or before March 1, 1884."

The plaintiff came to this country in September, 1883, commenced acting at the Fifth Avenue Theater, New York, on the eighth of October, and continued until the tenth of November, a period of five weeks. On the evening of the latter day, having discovered that his name was omitted from the play advertised for the ensuing week, he called upon the defendant, and was informed that his services would not be required for an indefinite period. The plaintiff protested, and notified the defendant of his entire willingness to play, and that if he was compelled to remain idle through the defendant's neglect, he should insist upon being paid at the rate of $700 per week. The plaintiff was not permitted to play for three weeks. He demanded his salary for this period and was refused. Subsequently he appeared at Boston under the defendant's auspices. This action is to recover $2,100, alleged to be due under the contract for the three weeks aforesaid, commencing Monday, November 12, 1883.

It is argued that the plaintiff cannot recover for the reasons: *First*. He did not "appear" during the period aforesaid, and the defendant was not required by the contract to permit him to appear. *Second*. Having subsequently accepted payment at the rate of $100 for each performance in which he appeared the plaintiff is estopped from claiming payment when he did not appear. *Third*. The de-

fendant does not agree to employ the plaintiff, the agreement is by the plaintiff alone to render services for the defendant. *Fourth.* In any event, the complaint is defective, the action should have been for damages.

The principal controversy arises upon the construction of the written contract and must be determined by that instrument alone. The interpretation contended for by the defendant is so harsh, so unfair, so wanting in reciprocity that the court should not hesitate to reject it provided the instrument is susceptible of any reasonable construction. According to the defendant no obligation rests upon him to do anything. The plaintiff, on the contrary, who, to use the language of the defendant's brief, is "an actor of fame and success in England," is required to leave his home and his profession there, cross the Atlantic at his own expense, pay his board in this country from September 24th till May 3d, and possibly for six weeks thereafter, furnish his own costumes, remain at the beck and call of the defendant for seven months, and refuse all other employment. To all this the plaintiff is bound, and the defendant is not bound at all. In other words the plaintiff must cross 3,000 miles of ocean, lose time, money and reputation, and if it suits the fancy or whim of the defendant to put some other actor in his place, he is wholly remediless, he cannot compel the payment of a single dollar. The charge that this interpretation is severe is not strenuously denied by the defendant, but he insists that the contract is one which the plaintiff was at liberty to make and having made it, he must abide the consequences. Undoubtedly, this is so. If the plaintiff made such a contract he cannot recover. But whether he made it or not is the precise question involved. If the language used clearly establishes the defendant's version it would unquestionably be the duty of the court to enforce it. But where the exact meaning is in doubt, where the language used is contradictory and obscure, if there are two interpretations, one of which establishes a comparatively equitable contract and the other an unconscionable one, the former construction should prevail. In such cases the court may well assume that the parties do not intend that which is opposed alike to justice and to common sense. Unless the language is so definite and certain that no other interpretation can be upheld a construction should not be adopted which must inevitably cast a reflection upon the sanity of one of the contracting parties.

The contract contains several clauses which read separate and apart from the context sustain the defendant's version, and they have been pressed upon the attention of the court with much learning and ingenuity. But taken as an entirety, read as one instrument, read in the light of surrounding circumstances it must be said that the plaintiff's construction is the true one. The contract provides, among other things, that the plaintiff is to be leading man in such dramatic performances as shall be given in the Fifth Avenue Theater

during the season of 1883–84. It is then mutually agreed that seven performances each week shall constitute a week's business. The plaintiff agrees to appear seven times a week and the defendant agrees that he will employ the plaintiff at least seven times a week. This provision is as binding on one of the parties as on the other, neither can avoid it. The defendant agrees to pay the plaintiff $100 for each performance *in which he shall appear*. The clause italicised is the one upon which the defendant bases his principal argument. It is possible that these words are unnecessary, that the contract would be perfect without them, and yet, taken in conjunction with the stipulation as to the number of performances each week, there is little difficulty in reconciling them with the other clauses. The contract would then read in substance: "The party of the first part agrees to pay the party of the second part the sum of one hundred dollars for each performance in which he shall appear, and it is understood and agreed that seven performances each week shall constitute a week's business." The plaintiff shall be paid for the seven performances but for no more, unless he actually appears in more. The clause referred to was also a wise provision in case the plaintiff through sickness, or otherwise, neglected to appear.

I am unable to see how the plaintiff waived any of his rights by his subsequent appearance at Boston. His action in that regard was entirely consistent with his theory of the contract. By accepting pay under the contract he did not accede to the defendant's interpretation to any greater extent than the defendant acceded to his by paying the amount due.

The objection that the defendant does not agree to employ the plaintiff has already been disposed of. If it were necessary, the law would imply an agreement to employ him during the stipulated period, the plaintiff having entered upon the discharge of his duties under the contract and rendered services for the defendant which were accepted by him. But there is here an express agreement. The contract is not unilateral. The one party agrees to act and the other agrees to pay.

Regarding the objection disputing the plaintiff's right to maintain the action in its present form it is sufficient to say that upon the trial the plaintiff asked leave to amend the complaint so as to meet the criticisms of the defendant. This request should be granted. It is not the policy of modern procedure to defeat a party who has a meritorious cause of action because he has not declared in the right form, especially when all of the facts are disclosed and the opposite party not misled. The fault here pointed out is that the plaintiff seeks to recover a sum of money *as wages* which he should recover as damages. The objection, though quite likely it is well founded, is a formal and technical one. Every element of surprise is wanting. Had the complaint been in the form suggested the result would inevitably have been the same. It is said that the defendant should be permitted to

offer, in mitigation of damages, proof that the plaintiff could have obtained an engagement elsewhere during the time he remained idle. The short answer is, that by the terms of the contract the plaintiff expressly bound himself "not to perform in any other theater." He could not have accepted a position under another management without himself violating the contract. The amendment is within the discretion of the court and is one which clearly should be allowed; to withhold it would simply protract litigation without change of result.

The plaintiff is entitled to the judgment demanded in the complaint.