The opinion of the court was delivered by
Watkins, J.
The plaintiffs claim of the defendants ten thousand and thirty-three dollars and fifty-four cents, per detailed itemized account, as the net balance due them on their engagement to erect and complete a church edifice on their property at the corner of Gamp and Gainnie streets, in the city of New Orleans, after deducting all cash payments received and other credits to which they are admittedly entitled.
It is alleged that by a written contract made with the defendants, *1066 who were represented by their duly constituted agent, H. P. McDonald, petitioners undertook to furnish the labor and material, and to erect and complete St. Paul’s church for the price of sixty thousand four hundred and eighty seven dollars and fifty cents, and upon the terms and conditions therein specified.
They aver that they did furnish the labor and material and did erect and complete said church edifice within the terms and conditions of said contract in every respect, and that there remains to them unpaid the balance aforesaid.
They further represent that defendants unjustly and arbitrarily withhold said sum from them, “ urging as a pretext for such refusal that under said contract they are not bound to pay except upon the certificate of the architects named in said contract, viz,: Messrs. McDonald Bros.,” and they aver that “the senior and controlling member of said firm of McDonald Bros., who, in said contract, is the agent of the defendants,” and “ said architect and agent of the defendants arbitrarily, illegally, and without justification, refuses, in spite of due demand, to furnish to petitioners the certificate to which they are entitled, assigning as a reason for declining to furnish such certificate that petitioners have failed to pay all of their indebtedness to their sub-contractors and material men, as they were in law and duty bound to have done. But the petitioners further represent and show that the amount they are due to sub-contractors and to material men is much less than the balance they have claimed, and they have authorized the defendants to pay said amounts and deduct the amounts thus paid from the sum that is due to them on settlement.
The defendants appeared and filed an exception of no cause of action, and no right of action, annexing thereto a copy of the building contract which is referred to in plaintiff’s petition as part thereof.
Dewar, Grandison & Co. intervened and alleged that J. P. Ma-honey and the defendants are indebted to them in the sum of three thousand and eighty-five dollars and thirty-eight cents for this, viz.: that they contracted with the firm of J. P. Mahoney &Oo., plaintiffs, to do the brick, stone and concrete work, and to make the excavations for the building or St. Paul’s Church, for the sum of thirty-five thousand four hundred and seventy dollars. That, in addition, they subsequently agreed to do certain extra work for the sum of two hundred and forty-two dollars and ninety-eight cents, making the *1067 entire contract price thirty-five thousand six hundred and sixty-two dollars and ninety-six cents, which is subject to a credit of thirty-two thousand five hundred and seventy-seven dollars and sixty cents, leaving due the balance above specified.
They show that their contract with John P. Mahoney & Oo. was duly registered according to law when entered into; and that since the work was completed a sworn statement has boen recorded showing the amount due them by John P. Mahoney & Co. and the defendants to be four thousand eight hundred and thirty-five dollars and thirty-eight cents, since which time a partial payment has been made, reducing it to the amount now claimed.
They allege that they have, under the law, a lien and privilege, as. builders and contractors and furnishers of material, upon the building erected and constructed, which has been accepted and used, and is now in the use and occupancy of the defendants. Their prayer is for personal judgment against the defendants and the recognition; and enforcement of their privilege.
To the intervention the plaintiff’s answer is a general denial, except in respect to defendants having taken possession of the church; edifice, which they affirm to be true.
Plaintiffs supplement their petition and allege that, since filing suit they have made, at the request of the defendants, certain repairs on the church edifice which they were under no obligations to make, and which were caused by the defective plan of said building or through the carelessness of other people over whom they had no. control, and for whom they were not responsible in any way.
They further allege “ that said building was thereby put in a condition completely satisfactory to the defendants, who took possession thereof, and are using the same without any cause of complaint and without pretending that there are any imperfections or insufficiency in the work,” etc.
The defendants first tendered an exception of no cause of action, to the petition of intervention.
Both exceptions having been overruled, defendants filed an answer to the plaintiffs’ original and supplemental petitions.
They admit that they entered into a contract with the plaintiffs, wherein it was agreed between them that plaintiffs should build for them a church edifice “under the supervision and control of Messrs. McDonald Bros., architects, for the sum of sixty thousand four hun *1068 dred and eighty-seven dollars and fifty cents, in accordance with certain plans and specifications therein referred to,” a copy of which is annexed thereto.
They then allege that they “stand upon this contract in all of its parts, and they invoke the terms thereof, as a law of the parties thereto, and they now plead the same and ask that the contract in its every part shall be performed in its entirety.”
They then aver that plaintiffs are estopped by the terms of said contract from demanding final payment of any amount that may be due under it:
1. Because the building has not been completed and finished in a good, workmanlike manner.
2. Because they have not furnished and produced a certificate from the architects of the building, McDonald Bros., certifying that the payment is due.
8. Because they have not furnished proper evidence that there is no mechanic’s lien upon the work, or that all claims for which the building could be held liable have been paid.
Further answering, defendants aver that they are not indebted to plaintiff in any amount whatever, for the reason that under paragraph 2 of the contract they were only obliged to pay plaintiffs “ eighly-five per cent of the amounts shown to be due by the certificates to be issued by the architects during the^time of the construction of the building,” and also that defendants “were to retain seven and a half per cent of the amount certified to be due in their hands, until the building had .been accepted as completed by the architects, and the other seven and a half per cent, for sixty days after acceptance.”
They then “ allege that the building has never been accepted by the architects, who, alone, are vested with authority to receive it when the work is complete,” etc.
They “plead said clauses of the contract and the refusal of the architects and defendants to accept the building as completed in bar of plaintiff’s claim.”
They further represent “that by the terms of paragraph 6 of the contract * * * it was agreed between the parties thereto that should plaintiffs fail at any time to comply with any conditions of said contract, the architects might cause any payment to be withheld until the architects were satisfied,” and that having failed to com *1069 ply with the terms of the contract, they are estopped from making any claim against them now.
They then set up against plaintiffs a reconventional demand, as follows:
That by the terms of paragraph 11 of the contract it was stipulated and agreed that the plaintiffs should complete the building be - fore the 23d of June, 1892, and for any delay of completion the plaintiffs should pay the defendants at the rate of fifty dollars per day, to be deducted from the amount that might be due them thereunder. They aver that plaintiffs failed to complete the building on June 23, 1892, and it is still uncompleted, and that by reason of said failure they owe defendants the sum of twenty-nine thousand and fifty dollars, that is to say fifty dollars per day from the 23d of June, 1892, to date of filing answer — covering a period of five hundred and eighty-one days — and that amount should be deducted from any sum due them under the contract.
They further pray that the said sum of twenty-nine thousand and fifty dollars should be increased at the rate of fifty dollars per day for every day which the building may remain in its present incomplete condition.
Their prayer is for judgment in defendants’ favor over against the plaintiffs in the sum of twenty-nine thousand and fifty dollars, reserving their right to sue for any additional amounts that may become due.
The defendants’ answer to the intervention is a general denial.
On the trial there was judgment in favor of the plaintiffs and against the defendants, for the sum of nine thousand six hundred and twenty-three dollars and fifty-four cents, with five per cent, interest from the 26th of October, 1893, subject to a credit of two thousand seven hundred and twenty-three dollars and thirty-eight cents, as the amountnow due to the sub-contractors of the plaintiffs, Dewar, Grandison & Co., reserving to the plaintiffs their right to sue the defendants for damages.
It was in favor of the intervenors, and against the defendants, for the sum of two thousand seven hundred and twenty-three dollars and thirty-eight dollars, with legal interest from judicial demand, reserving them their right to sue defendants for extra work performed and materials furnished them.
From that judgment the defendants have appealed.
*1070 Analyzing the pleading, as outlined in the foregoing extracts, we find the following to be a fair summary thereof:
All parties admit that plaintiffs contracted to build a church edifice for the defendants at an agreed price, and upon certain terms specified in the contract.
It is affirmed by the plaintiffs that their right to sue is denied- by the defendants, on the ground that they are not bound to pay except upon the certificate of McDonald Bros., architects, and this is likewise asserted by the defendants.
It is alleged by the plaintiffs, that the refusal of the architects to furnish them with a certificate that the residue of the price is due was an arbitrary and illegal act on the part of the said architects, the senior member of which firm was the agent of the defendants at the time. And the defendants having assigned as the reason why the architects withheld their certificate, that plaintiffs had not paid all their indebtedness to the sub-contractors and material men, the plaintiffs aver that the amount due to said sub-contractor3 is much less than is due to them, and they have authorized defendants to pay said amounts and deduct same from the amount due on settlement. And whilst neither denying nor affirming that averment, the defendants specially invoke and urge against the plaintiffs the stipulations of the contract as an estoppel, and as disclosing no cause of action; and subsequently admit that they contracted with defendants to build for them a church edifice under the control and direction of McDonald Bros, as architects, without disavowing that the senior member of that firm was their agent, as alleged. Notwithstanding plaintiffs, in their supplemental petition, distinctly charge that, since this suit was filed, they have made, at the request of the defendants, certain repairs on the church edifice, which they were under no obligation to make, and which were caused by the defective plan of said building, or the carelessness of other people, over whom they had no control and for whom they are not responsible; and, notwithstanding that said building was thereby put in a condition completely satisfactory to the defendants, who took possession thereof and are now using same without any cause of complaint, and without pretending that there are any imperfections in the work; the defendants, without making any denial or disavowal whatever, set up a defence that the duilding has not been completed in a good and workmanlike manner to the *1071 satisfaction of the architects, and insist upon the stipulation of the contract giving them the right to withhold fifteen per cent of the contract price of the edifice “until the building is completed and accepted by the architects.”
The defendants, then assuming the character of plaintiffs in re-convention, allege that under the stipulations of the contract the plaintiffs agreed and bound themselves to complete the building by the 23d of June, 1892, or to pay them the penalty of fifty dollars per day for every day they were in default in so doing after that date; and, averring that they had been in default for a period of five hundred and eighty-one days, they demand of plaintiffs the sum of twenty-nine thousand and fifty dollars on that score.
Taking a comprehensive view of defendants’ conceptions and defences, they appear to us to be entirely technical.
While it is true that the defendants were under no obligation to pay the final balance due under the contract, except upon the approval and certificate of the architects, yet we are fully satisfied that one member of the firm of architects was an agent of the defendants, and, occupying that relation toward the defendants, may have unduly influenced the firm to withhold a certificate of approval of the work to which they were righfully entitled.
This impression is fortified by the fact that the architects assigned as their reason for withholding a certificate, that plaintiffs had not paid up the sub-contractors — not that the building had not been finished and completed according to contract — while it is a fact, undenied by the defendants, that they had been fully authorized to pay such amounts as were ascertained to be due, and deduct same on settlement with plaintiffs.
On this state of facts we are of opinion that the plaintiffs were entitled to sue, and had a right of action against defendants, notwithstanding they had failed to procure a certificate from the architects.
The district judge evidently entertained that view, maintained the suit, and rendered judgment. Finding that the sub-contractors had not been paid in full, and were entitled to a balance on their contract, he adjudged their respective differences and gave them judgment for the balance due, and he allowed the plaintiffs the amount of their demand less this reduction.
Entertaining this view and appreciation of the controversy, the discussion is narrowed to a very restricted limit, for it is to be ob *1072 served that defendants’ contention mainly is, that the building had not been completed in a good and workmanlike manner, to the satisfaction of the architects, and their insistence is, that they have a right to withhold fiifteen per centum of the contract price “until the building is completed and accepted by the architects.”
It is also to be observed that the defendants do not, for themselves, deny the completion of the building, much less do they set out in detail or in substance any defects or faults or imperfections in the structure. They do not deny that they are in full possession and use of the edifice for the purposes for which it was erected, and in the absence of such averment and denial, we feel authorized to assume that no such fault or defect existed at date of their acceptance of the work without either protest or complaint.
It is equally significant that, notwithstanding the architects withheld certificate from the plaintiffs, on the faith of which they were entitled to receive final payment from the defendants, they do not assign as a reason for their refusal that there were any faults, defects or deficiencies in the construction of the edifice, but they put their declination to furnish the certificate on the ground that the plaintiffs did not furnish them proper evidence that all sums due for materials and to the sub-contractors had been paid.
On the merits, it is urged by defendants’ counsel that there is testimony to the effect that there are several small amounts due for materials furnished, aggregating about one thousand six hundred and twenty-five dollars and ninety-seven cents, while on the other hand it is shown the true amountof said claims aggregate only seven hundred and twenty-one dollars and fifty cents. These claims are independent of the claim of the sub-contractors who have intervened. While it is true that some of these claims have not been registered, so as to affect the building with a lien, and those creditors have not been made parties, we think it but just and right that their claims should be protected by our decree.
Defendants also insist upon the cost of additional changes and alterations in the contract, that were made at the suggestion of the architects, amounting to one thousand four hundred and seventy-nine dollars.
It is evident that these items were properly disallowed by the judge a quo, as they were not set out in the defendant’s answer, and they are not satisfactorily established by evidence.
*1073 The judge a quo rejected entirely the defendant’s reconventional demand for what is termed liquidated damages, consisting of fifty dollars for every day that the defendant delayed the completion of the edifice, after the date fixed in the contract for its completion and acceptance.
The contract was made on the 23d of October, 1891, by and between Henry P. McDonald, as agent for and on behalf of the defendants, and the plaintiffs. It provides that the work shall be commenced at once, and completed by the 23d of June, 1892; and for any delay of completion it is agreed that the second party (plaintiffs) shall pay damages at the rate of fifty dollars per day, which may be deducted from the contract price, or recovered Dy suit, etc. See. 11.
“The second party (plaintiffs) assumes the risk of any accident or damages that may occur to his work or material, or to persons or property about the work pending its completion,” etc. Sec. 12.
Counsel for the defendants admit that the congregation began worshipping in the church, for the first time, on the 16th of April, 1893, though the church was not finished, they say. •
They claim, for the intervening time of two hundred and ninety-nine days, at fifty dollars per day, an aggregate sum of fourteen thousand nine hundred and fifty dollars, though their prayer is for twenty-nine thousand and fifty dollars for five hundred and eighty-one days’ default.
Of the plaintiffs’ defences to their reconventional demand, the defendants say, in their brief:
“ Plaintiffs seek to explain the delays, and to relieve themselves from the effects thereof, by testimony going to show that the delays were, in part, due to matters not in their control. For instance, they claim that the plans had to be corrected before they could make a start; that the cement called for in the specifications stained the stone, and they could not, therefore, continue the work; that the tower of the church leaned, because of faulty construction, based on defective and inadequate plans and specifications. Evidence in support of these defences was offered, and objected to, on the ground of ineompetency and irrelevancy. The objections were overruled, and bills of exception were reserved. The objections, it is submitted, should have been sustained.”
¥e think the objection was not well taken, for it was both competent and relevant to enquire whether the “ delay of completion” of *1074 the edifice after the date fixed for its completion was the result of any accident or damage done to the (plaintiff’s) work or material.
For, we read in the contract this pertinent and controlling provision, vis.:
The party of the second part (plaintiffs) agree that they will “furnish all labor and material, and erect complete, St. Paul’s Church * * * in exact accordance with the plans and specifications prepared therefor, by McDonald Bros , architects, and under their inspection and supervision,” etc. Section 1 of contract.
All of the defences enumerated appear to come clearly within the contemplation of that section.
All the plaintiffs undertook to do was to furnish the labor and the material, and to do the work. The plans and specifications for the work was matter for the architects alone.
In order to put the blame on the plaintiffs the burden of proof was upon the defendant to show, by fair preponderance of proof, that the work was not performed by the plaintiffs in accordance with the plans and specifications furnished, them by the architects; and also that the delay in the completion of the structure on time was due to the faultiness of their workmanship or material.
This burden the defendants did not discharge. From the record we find that the first delay was occasioned in November, 1891, by a necessary change which the architects had to make in the drawings and plans for the edifice, and in consequence thereof the manufacturer of the ironwork was delayed, and no progress with the work was made until the 28th of December, 1891. The foundation of the building could not be commenced until the 18th of January, 1892. The architects notified the plaintiffs to stop all work and wait for the revised plans, and they acted accordingly.
The second delay was occasioned by the cement staining the stone. This occurred in March, 1892, and lasted about one month. The work was suspended on that account, on the order of the architects.
There is no doubt of the fact that plaintiffs used the identical cement that is called for by the contract, and it is neither proved nor contended that it was any fault of the plaintiffs that the cement stained the stone. It is in proof that the cement was mixed exactly in accordance with the instructions of the architects and their superintendent.
*1075 The third delay was occasioned by the leaning of the tower, caused by faulty and defective specifications.
The record shows that the first indication of any defect in the tower is to be found in a letter which was addressed to the architects by their manager. It runs thus:
“New Orleans, May 24, 1892.

“McDonald Bros., Architects:

“ Dear Sirs — I notice for the first time, to-day, a crack over the front door on Oamp street, the exact cause of which I have not yet been able to discover,” etc.
To this letter the architects wrote the following reply, viz.:
“Louisville, Ky., May 26, 1892.
“ St. Paul’s Church, Charles R. Coats, Esq., No. 66 Baronne street, New Orleans, La.:
1 ‘ Dear Charles— * * * Referring to the crack over Oamp street entrance, I am satisfied, without receiving your report, that it is due to the slight want of settlement which will necessarily take place on the side of the tower where the load of the gable comes on it.
“ Have no apprehension about it. Keep it concealed as to avoid attracting any attention to it, and when the proper time comes to close the gable we will simply cut it out and let it come together. If anyone remarks it explain the situation. * * *
“Yours truly,
“McDonald Bros.”
This correspondence explains itself.
And we can not imagine what more conclusive evidence could be required of the fault of this defect in the building of the tower being that of the architects. They do not even suggest to their own subordinate that it was the fault of the plaintiffs.
This occurred, as the dates of the letters will show, on the 24th of March, 1892, prior to the date fixed in the contract for the completion of the building, the 23d of June, 1892.
The testimony substantially shows that the tower was built in conformity with the plans furnished by the architects, and that the superintendent of the architects notified plaintiff’s workmen to stop work and go away on account of the threatened fall of the church tower. It shows that it was suffered to remain in that condition for *1076 six weeks or two months before the work was resumed, and that five or six months’ time was occupied in getting the tower righted up again.
The weight of the testimony is to the effect that if the trouble and delay occasioned by the leaning of the tower had not occurred, the edifice would have been completed on time. That all the laborers and material were on the ground and in readiness at the time of the occurrence.
Without going any further into the detail, we will state our conclusion to be that the responsibility for the defective tower is upon the architect and not upon the plaintiffs, for it is evident that the leaning of the tower was occasioned by the primary defect in the plans and specifications for which the architects were responsible, and not by the faultiness of the material or workmanship for which the plaintiffs were responsible.
And in confirmation of our theory, while in no way influencing our opinion, we may say that the fact has been called to our attention that the defendants have a suit against the architects on that score, and that suit gives rise to the suggestion that in this suit they are exhausting their recourse against the plaintiffs in order to justify their demand against the architects.
Altogether our conclusion is that the judgment rendered by our learned brother of the lower court has done substantial justice and should be affirmed, saving the rights, however, of the material men to the extent of seven hundred and twenty-one dollars and fifty cents, or so much thereof as may be judicially established.
It is therefore ordered and decreed that the judgment appealed from be affirmed, with the restriction that it shall not be-enforced until satisfactory provision is made for the settlement of the claims of material men, to the extent of seven hundred and twenty-one dollars and fifty-five cents, or so much thereof as may be judicially established.