(4 App. Div. 42.)

## MILLIKEN et al. v. KEPPLER et al.

(Supreme Court, Appellate Division, First Department. April 17, 1896.)

1. BUILDING CONTRACT—CONSTRUCTION.

Where a building contract provides for the completion of the building by a specified time, "contingent upon strikes and boycotts," it protects the contractor against liability for unavoidable delay so far as it is due to strikes, and the strikes referred to are not limited to such as occur in the shops of the contractor.

2. SAME—LIABILITY OF CONTRACTOR FOR DELAY.

In an action to establish subcontractor's liens on a building, in which the owners filed a counterclaim for delay in completing it, it appeared that the contract was dated July 7, 1892, the year of the Homestead strike, and provided that the building should be completed by a specified time, "contingent on strikes and boycotts"; that it was not completed by such time; that in March, 1892, the contractor, a corporation, made a contract with an iron and steel company providing generally for the furnishing of such material as was required in performing such contract; that, on the day the building contract was signed, the contractor notified such company, and directed the forwarding of material; and that, in a day or so, it learned that such company's men were not at work, but took no immediate steps to place the order elsewhere. The president of the contractor testified that, previous to the signing of the contract, his company received bids from other concerns, and there was no concern he would intrust with the work at that time, outside of one, which was so busy that he did not think it advisable to go to it, especially as he had the promise from the manager of the iron and steel company that, if the contract was given to it, it would take precedence over all others. The evidence of the secretary of the iron and steel company showed that not until the end of July or the beginning of August was the situation at the works regarded as serious; that the company's contract with the labor association had expired June 30, when the men quit work, but negotiations as to wages were pending, and it was expected day by day that a settlement would be reached. An experienced man in the business of iron construction testified that it took from six to eight weeks in August and September to fill an order, on account of the demand during the summer months. *Held*, that the delay was caused by strikes, and the contractor was not liable for failure to perform by reason of not having placed his building contract elsewhere.

Appeal from court of common pleas, equity term.

Action by Edward F. Milliken against Pauline Keppler and others (as executors and trustees under the will of Joseph Keppler, deceased), William Ottman and another (as trustees of the estate of Jacob Ottman, deceased), and Adolph Schwarzmann, owners of a certain building; the Carrere & Haas Iron Works, the contractor which erected the building; and others,—to establish and enforce

subcontractors' liens, in which the defendant owners set up a counterclaim for loss of rent caused by failure of defendant the Carrere & Haas Iron Works to complete the building within the time specified in the contract. From a judgment dismissing the counterclaim, such owners appeal. Affirmed.

The appellants, the owners of certain land on the northwest corner of Mulberry and Jersey streets, in the city of New York, on July 7, 1892, made a contract with the defendant-respondent the Carrere & Haas Iron Works whereby the latter agreed to erect and finish a building thereupon in accordance with certain plans and specifications, furnishing the iron and all other necessary materials specified in the iron specifications. The work was to be done February 1, 1893. The seventh clause of the contract reads as follows: "The parties of the second part herein [Carrere & Haas Iron Works] agree with the parties of the first part that the said iron work for this new building shall be finished by them in the specified time as hereinbefore mentioned, and which item (as to said time) is considered herein and under this contract a most important feature; but should they fail to complete the job up to aforesaid date, and it should be proven that the delay is caused by the said parties of the second part, then they shall be held responsible and answerable for the loss of the amount of rent caused to the parties of the first part on account of not having the building ready for renting purposes by the first day of February, 1893." Between the words, "In witness whereof," etc., and the signatures of the parties to the contract, were inserted the words, "Contingent upon strikes, boycotts, and delays unavoidable." The last three words were stricken out before execution, leaving the contract contingent only upon strikes and boycotts. The work was not finished by February 1, 1893, and the appellants set up a counterclaim for loss of rent. The plaintiffs and all parties other than the appellants, and the Carrere & Haas Iron Works and its receiver, are subcontractors, who have filed liens against the property. A stipulation was entered into by all parties fixing the amount still due the iron works and the lienors under the contract, and for extra work. This stipulation is without prejudice to the counterclaim of the owners. It disposes of all questions except the validity of this counterclaim, which was dismissed by the trial court.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Louis C. Raegener, for appellants.
R. M. Martin, for respondent lienors.
L. Sidney Carrere, for respondent receiver.
Luke A. Lockwood, for plaintiffs respondents.

BARRETT, J. The question whether or not the trial court erred in dismissing the counterclaim of the appellants is one of mixed law and fact. It will be well to consider first the construction to be given to the contract. The performance of the contract was made contingent upon strikes and boycotts. The appellants claim that the strikes referred to were only such as might occur in the shops of the contractor. We see no reason for thus limiting the words. The obvious intent in inserting the clause was to protect the contractor from liability for delays which it could not help, so far as they should be due to strikes. There is no reason to believe that any strike which had a legitimate tendency to retard the contractor was not meant to be covered by the expression in the contract. It does not, however, follow from this that the contractor was at liberty to order material from a striking factory, and then rely upon the

clause for its protection. A duty rested upon it to perform the contract if possible, and to exercise care, diligence, and skill to this end. All that was obtained was immunity from the general rule of law which refuses to accept inevitable and unforeseen accident as an excuse for the nonperformance of an absolute agreement. Harmony v. Bingham, 12 N. Y. 99.

The facts are that the contractor made a contract with the Columbia Iron & Steel Company in March, 1892, providing generally for the furnishing of material of the sort required later in performing this contract; that on July 7th, the day when the contract was signed, the president of the Carrere Works wrote the Columbia Company notifying it, and directing the forwarding of material; and that he learned a day or so later that the Columbia Company's men were not at work, but took no immediate steps to place the order elsewhere. He testifies:

"Previous to the signing of the contract with the Puck people, on July 7th, we received bids, or tried to receive bids, from other concerns; and there was no concern that I would have liked to have intrusted that work with at that time, outside of one, which were so busy that I did not think it advisable to go to them, especially as I had the promise from the vice president and the manager of this mill that, if the contract were given to them, it would take precedence over all others."

It also appears that this was the year of the great Homestead strike, and that the beam manufacturers were having a good deal of difficulty in supplying orders. Milliken, who had been engaged in the business of iron construction for 15 years, testified that it took anywhere from 6 to 8 weeks in August and September to fill an order, on account of the demand during the summer months. But the precedence which had been promised to the Carrere Works resulted in a delivery within two weeks from the time the works of the Columbia Company started up. Milliken's estimate was probably conservative for this particular year. He was asked: "Were you delivering continuously at that time [August, September, and October, 1892]?" And he replied: "No; we were not delivering continuously. Some of our orders we were back three months on." It also appeared by the evidence of the secretary of the Columbia Company that not till the end of July or the beginning of August was the situation at the works regarded as serious. The company's contract with the labor association had expired June 30th, at which time the men quit work; but negotiations as to wages were pending, and it was expected day by day that a settlement would be reached. All of this evidence was practically uncontradicted. The fair inference from it is that the contractor was justified in the belief that it would get just as prompt and satisfactory attention by leaving the order where it was originally placed as by attempting to place it elsewhere. It follows that the contractor, while exercising reasonable prudence and diligence in executing its contract, was prevented by "strikes." The only substantial claim of failure to perform was the delay in the delivery of the beams, and for this the contractor was not liable, under a fair interpretation of the contract.

The view we have taken renders it unnecessary to discuss the

testimony in detail, or to consider at length the other question presented by counsel. Our conclusion, however, is that the delay caused by the strike in furnishing the beams was immaterial, in view of the tardiness of the mason, and that the acts of the appellants constituted a waiver of the delay. Our judgment might well rest upon these grounds, quite independent of the view we have taken of the strike clause. We have also examined the record as to the minor details of the work, notably the mullions, lintels, and shutter eyes; and we think that the decided weight of evidence favors the view that the contractor was not in default in any of these matters.

The judgment should be affirmed, with costs. All concur.