BREAUX, C. J.
Plaintiff seeks to recover the sum of $3,300, with 8 per cent, interest from judicial demand, last installment claimed as due under a building contract.
The plaintiff is a contractor and builder. The defendant is the owner, for whom plaintiff bound himself to build houses on his lots in this city. The original amount to be paid for these improvements was $18,300, in six installments. The last installment was to be paid 15 days after the completed and accepted work.
The defendant declined to pay, and alleged for reason in thus declining that plaintiff was indebted to Mm for “demurrage” for not having completed and delivered the houses within the time stipulated.
For this “demurrage” he claims a
credit of........................ $1,035 00
In the second place, he charged that plaintiff had failed to build one of the houses to the height required by
the plan....................... 500 00
And, Surther, that there were small defects in the work for which he
chaiged......................... 200 00
Also for bills and orders of plaintiff paid by defendant and admitted by
defendant at the trial............ 83 46
Attorney’s fees...................... 500 00
$2,318 46
In our decision heretofore handed down we affirmed the judgment of the district court for $3,300, with legal interest from judicial demand, subject to a credit of $1,069.
(1) This credit consists of a sum which the defendant had paid, to which he was, of course, entitled as
a credit......................... $ 971 54
(2) Bills admitted by plaintiff....... 97 46
$1,069 00
The defendant and appellee applied for a rehearing, which was granted, and in consequence the case is before us on rehearing.
We take up for decision the item 1, for “contract demurrage,” $1,035, an item not heretofore allowed, and now in part allowed.
Plaintiff, in argument, through counsel, admitted that there was a delay in completing and delivering the work beyond the time fixed in the contract.
The stipulation in the contract was that plaintiff should complete and deliver the houses on or about the 25th day of September, 1902. The houses were delivered in the November following. It becomes necessary to consider and interpret the clause of the contract whereby plaintiff bound himself to pay the sum of $15 liquidated damages for each day’s delay.
Plaintiff seeks to fasten the cause of delay on the defendant or his agent, and in this con *227 nection his further contention is that he owes no damages, “for [his contention is] an owner who is himself the cause of delay cannot recover.” Rev. Civ. Code, art. 2120; Haughery v. Thiberge et al., 24 La. Ann. 442; Mahoney & Co. v. St. Paul’s Church, 47 La. Ann. 1064, 17 South. 484; Ice Machine Co. v. McDonald et al., 48 La. Ann. 446, 19 South. 459.
Manifestly, if it he true, as alleged and as some of the testimony sets forth, that defendant is the one at fault for the delay of which he complains, his plea must fall to the extent at least that he (defen'dant) is at fault.
This brings us to the question: Was defendant at fault? We find an answer readily enough in the fact that there was unquestionably delay caused by the owner, although not to the extent that plaintiff alleges.
In this connection we will first take up for decision the time taken by defendant to put in wires for lighting his houses by electricity. The defendant owner reserved the privilege, if he should so desire while the building would be under construction, to install electric wires for lights, call hells, and apnuneiators; also to put in hard-wood mantels.
We understand that it devolved upon the defendant to be in readiness to begin this work of lighting; and, in the second place, it also devolved upon him not to delay or impede plaintiff in his work of constructing these houses.
Defendant was timely notified to put in the electric wiring, and he, it is true, began immediately. But the preponderance of the testimony shows that subsequently in the work of elettric wiring plaintiff was delayed. The work of putting in laths was thereby stopped. It was Stated in defense that the carpenters might have done other work on the building during the time that lathers chose to stop work.
The neglected opportunity to do other work is not clearly proven, although it may be that, if the workmen had been anxious to work, they would have found something else to do on these buildings. Just the work they could have done is not made evident by the testimony. The positive testimony is that there were delays caused by this electric lighting work. There was no counter testimony introduced to prove that the workman of plaintiff might in the meanwhile have taken up other work. There is abundance of testimony that the immediate work of plaintiff’s workmen was stopped, and could not very well be resumed ' before the lathers had completed their work. There is, in consequence, no ground for damages for the eight days’ delay caused by defendant’s workmen — days taken to put in electric lighting wires.
The 4 days’ delay laid at the door of defendant for failure to timely select the art glass to put in the building is also sustained by sufficient proof, and are deducted from the 56 days before mentioned. He (defendant) was called upon by the glazier, who was subcontractor of plaintiff, and requested to make needful selection in order that the workmen for plaintiff might proceed with the work. For one reason or another defendant dillydallied a week before making up his mind. He is not entitled to these € days of indecision or indifference in selecting his art glass.
This brings us to the consideration of one day’s delay while at work putting up a front step. That asserted delay is not sustained by the testimony. The witness Poillon, called by plaintiff, said that after he had been stopped he was not delayed in the work. He took up other work. The following is part of his testimony:
“Q. You were working on the building?
“A. Oh! yes, sir.
“Q. You were doing something else while you were waiting for these steps to be straightened out?
“A. Yes, sir; that’s all.”
As he was at work elsewhere on the building, it cannot well be charged that the general work of the building was delayed.
The plaintiff asks for a deduction of two *228 days in the delay, for time lost, as he says, in matter “of details of arches.” Here, again, the contractor is not sustained by his own testimony, for he testified:
■ “Q. The lather could not work on those two days and he was working at something else?
“A. Yes, sir.
“Q. How long did it take the lather to complete his lathing after his details of the arches were given?
“A. I don’t remember how long it tooh.” (Italics ours.)
In addition to the foregoing, which calls for nothing very certain, we have examined other testimony on the subject, and concluded that these two days do not make up any part of an item which should be deducted.
With reference to 18 other days, for which claim is made on the ground of delay, it appears that, owing to the fact that some of the work’ did not meet .with the approval of the owner, he held back a much needed installment of amount due to the contractor. One of the subcontractors would not continue with the work without the needful cash, which the contractor did not have and could not have before collecting the installment to which he was entitled.
This was for paving. Babst was the subcontractor. He alone testified. It appears that the paving work was completed by him about two weeks prior to the time fixed to deliver the houses. This paving work was done independently of the work on the houses. It did not interfere at all with plaintiff’s work. The men were working on the houses when the pavement was finished.
We insert the testimony here bearing upon this point:
Babst:
“Q. Were these houses completed, or were men working on them, when you finished the pavement?
“A. Still at work on them.”
Poillon, a carpenter, witness for plaintiff, testified that the plumbers — not the paving men — were the last on the work.
Poillon:
“Q. You were the last men there?
“A. Yes, sir.
“Q. There were no painters?
“A. Yes, sir; there were painters.
“Q. And plumbers?
“A. Yes, sir; the plumber was there. In the bathroom he was. I had to do the repairing,”
The proverbially slow plumber was the last man on the building, and defendant has no ground to urge delay occasioned by the paving workman, for he caused no delay.
This was the only testimony to prove damages on the score last mentioned.
Moreover, on the day fixed to deliyer the houses, defendant called on plaintiff for delivery. In plaintiff’s written 'reply to defendant’s request, he enumerated the causes for the delay and said nothing about these 18 days, and, in consequence, the delay of 18 days has very much the appearance of 'an afterthought.
We do not think we should add them to the days, delay caused, as plaintiff pleads, by defendant.
We resume: Time for delivery, 25th of September, 1902. Date house was delivered, 20th November of same year. Number of days claimed by defendant, 69 times $15 each, equals $1,035.
Plaintiff sets up counterclaim for delays arising, as he pleads, on account of defendant’s delaying acts.
From the days of delay we have deducted 47 days, which leaves 9 days, for which the plaintiff is liable, amounting to $135.
In argument at bar the qfiestion arose as to whether the damages could be recovered as liquidated damages in accordance with the terms of the contract. The stipulation as to amount was reasonable, in view of the rental which might have been collected on ■each of the houses. Such a stipulation is intended for the protection' of all concerned; the owner to collect an amount corresponding with his loss, and, on the other hand, the contractors are not to be made to pay an ex *229 cessive amount. This, we take it, is the intention of article 1934, Rev. Civ. Code.
A similar stipulation was enforced in Succession of Thompson v. Allison, 28 La. Ann. 735. It was sustained in Ward v. Building Co., 125 N. Y. 230, 26 N. E. 256. It is “liquidated damages.” Mills v. Paul (Tex. Civ. App.) 30 S. W. 558. We concur with views expressed on the subject in cited decisions.
The claims for insufficient altitude of one of the houses, for sundry incompleteness, and for attorney’s fees are not allowed. We will not follow all the details connected with these claims. They have been each discussed and thoroughly considered, with the result that our decree shows.
We will, in passing, state — we say, in passing, for we do not deem it necessary to dwell upon the subject at length — that one of the items claimed by defendant is for a change in the pitch of the roof of one of the houses. The testimony shows that the plan of the house as to this particular pitch was misleading. An architect’s plan should be plain enough to be followed without very great difficulty.
While the contractor is expected to avoid patent errors of the plan which jump to the eye, he is not bound for errors which are not patent. The error was not plain; besides, there was no resulting damages. . The roof was not very much different from what it would have been, if the error had not been in the plan.
There is some question as to the proof of these items. A person claiming must sustain his claim by sufficient proof. This has not been done to a degree that would, as we think, justify us in reversing the judgment as to these claims.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by deducting from the sum heretofore allowed plaintiff on his demand the further sum of $135; that is, defendant is entitled to this sum as an additional credit. Recapitulation: Amount allowed plaintiff, $3,300, with interest, less $1,069, and now $135, all equal to $1,204.
As amended, it is affirmed, at appellee’s costs (on appeal).