# KANSAS CITY BRIDGE CO. v. LINDSAY BRIDGE CO.

No. 1575.   Opinion Filed February 6, 1912.

(121 Pac. 639.)

1.   **CONTRACTS—Construction—General Rules—Reasonable Construction.** Where the language of a contract is contradictory, or where the meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract.

2.   **SAME—Intent.** The intention of the parties must be deducted from the entire agreement, and not from any part or parts of it, because, where a contract has several stipulations, it is plain that the parties agreed that their intention was not expressed by any single part or stipulation of it, but by every part and provision in it, considered together, and so construed as to be consistent with every other part.

3.   **SAME—Delay.** A bridge company entered into a contract with a toll bridge company in the Indian Territory to have the substructures and superstructures of three bridges completed on or before October 1, 1907, subject to delays on account of violence of the elements, or causes unavoidable and beyond the control of the first party, and further provided that, if the work was not done within four months from the date of the approval of certain security to be furnished by the second party, the first party was to pay certain liquidated damages for each day that the completion of the bridges was delayed. **Held,** that the contract for the payment of liquidated damages had reference only to inexcusable delays, and if, as a matter of fact, the completion of the bridges was delayed on account or by reason of the contingencies guarded against by the contract, no liability would thereby attach.

(Syllabus by Sharp, C.)

*Error from Garvin County Court;*
*W. B. M. Mitchell, Judge.*

Action by the Kansas City Bridge Company against the Lindsay Bridge Company. Judgment for defendant, and plaintiff brings error. Reversed, and new trial directed.

*W. A. Ledbetter, J. B. Moore,* and *J. A. Bass,* for plaintiff in error.

*C. L. McArthur* and *J. B. Thompson,* for defendant in error.

Opinion by SHARP, C.   On May 28, 1907, the Kansas City Bridge Company, of Kansas City, Mo., a corporation, made and entered into a written contract with the Lindsay Bridge Company, of Lindsay, Ind. T., a corporation, for the construction of three bridges across the Washita river near Lindsay. The provisions of said contract, out of which this controversy has arisen, are as follows:

"The said first party agrees to have the substructures and superstructures completed on or before October the first, 1907, provided that if by reason of the violence of the elements, or from cause unavoidable and beyond the control of the first party, it should be impossible to perform said work within the time limited, then the time for the fulfillment of this contract shall be extended for a period not less than that caused by such delays.

"And it is agreed by and between the parties hereto that party of the first part is to furnish bond to party of the second part in the sum of $5,200, conditioned that party of the first part will well and truly perform its part of this contract, and party of the second part is to furnish security for the payment of this contract price herein specified, satisfactory to party of the first part.

"And it is further agreed by party of first part that, if the three spans are not completed in accordance with the plans and specifications hereto attached within four months from the date of the approval by party of the first part of the security of the party of the second part, then party of the first part shall pay to party of the second part a penalty of $7.50 each day thereafter until bridges are completed for each of said bridges which are not completed in accordance with the plans and specifications hereto attached within the said four months, and any amount due party of the first part may be deducted by party of the second part from any payment which may at any time become due from party of the second part to party of first part, and, if at the final settlement there shall be greater amount of penalty due party of the second part than the balance then due

on the contract price, party of the first part shall pay the party of the second part the difference between said amounts."

These paragraphs, for convenience, will be numbered 4, 8, and 9, respectively.

Suit was brought to recover a balance of $555 on the contract. Defendant alleged that this balance was originally due plaintiff, but that by reason of the fact that plaintiff had breached said contract there was due said defendant $617.50 liquidated damages, and asked judgment over and against plaintiff in the sum of $62.50. Plaintiff's testimony being excluded by the court, the jury under the court's directions returned a verdict in favor of defendant and against plaintiff in the sum of $60.

The assignments of error may all properly be considered under the head: Did the court err in excluding the depositions of plaintiff? These depositions were offered, presumably, for the purpose of showing that the bridges were not completed on or before October 1, 1907, due either to the violence of the elements or from causes unavoidable, and beyond the control of the first party, making it impossible to perform the work within the time limited. Defendant contended that, under the terms of the contract, the plaintiff bound itself at all hazards to complete the bridges on or before October 20th, and that it made no difference what reasons it had for not completing them at that time, that it was liable on the contract for liquidated damages at the rate of $7.50 per day for each bridge not completed by October 20th. There is no dispute as to the time at which the bridges were in fact completed.

The question in this case is whether the plaintiff agreed to pay the defendant the liquidated damages stipulated in the contract during the time that it was delayed in completing its contract by the unavoidable contingencies named in the agreement, and that question must be determined by a fair construction of the contract. The purpose of a written contract is to evidence the terms upon which the minds of the parties to it meet when they make it. Hence the true end of a contractual interpretation is to ascertain that intention, and when it is found, it prevails

over verbal inaccuracies, inapt expressions, and the dry words of the stipulations. Section 4 provides that the party of the first part should have the substructures and superstructures com-. pleted on or before October 1st, not absolutely, but condition- ally. What was the condition? That it be not delayed on ac- count of the elements or from unavoidable causes beyond its control, and, in the event of the occurrence of either or both of such contingencies, the time should be extended for a period not less than that caused by such delay. Section 8 provided, among other things, that the party of the second part should fur- nish security for the payment of the contract price satisfactory to the party of the first part, while section 9 provided that, if the three spans were not completed according to plans and specifications attached within four months from the date of the approval by the party of the first part of the security of the party of the second part, then the party of the first part should pay to the second party the penalty of $7.50 each day thereafter for each bridge not so completed within said four months.

The only real conflict lies in the language used in the first part of section 4, fixing October 1st as the time for the com- pletion of the substructures and superstructures, and that part of section 9 providing that the penalty should attach if the bridges were not completed within four months of the approval of the security. Section 4 expressly provides that, in the event of certain expressed contingencies, the time should be extended. Time for what? The fulfillment of the contract. The contract included the terms of the whole engagement entered into by the parties, as expressed by their entire writings. Enforced delay, due to the causes mentioned, conferred, by the express terms of the contract, additional time as an equivalent of the time lost. Thus the exact time was four months and two days in which the work was to be completed, unless for the reason named additional time should be required. In fixing the time for the attaching of the penalty, instead of being made to attach October 1st, it was fixed at four months from the date of the approval of the security. This it is alleged and shown by defendant was

furnished June 20, 1907, and presumably was on said date approved by the plaintiff, and, to use the language of the contract, "found satisfactory to party of the first part." The penalty, then, in no event would attach until four months from June 20th, or October 20th; but, in the event of the happening of one or the other of the contingencies guarded against, then could it be said that the penalty would attach until the first party was in default? This it would be according to defendant's contention, if, in fact, the bridges, for whatsoever cause, were not completed by October 20th. The effect would be to render plaintiff liable for the delay providing the bridges were not completed by October 20th, and that whether the fault be excusable under the terms of section 4, or inexcusable and such as was due to the neglect or failure of the plaintiff to properly observe and carry out its undertaking.

Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes is inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract. *Pressed Steel Car Co. v. Eastern Ry. Co.,* 121 Fed. 609, 57 C. C. A. 635; *Coghlan v. Stetson* (C. C.) 19 Fed. 727, 729; *Jacobs v. Spalding,* 71 Wis. 177, 186, 36 N. W. 608; *Russell v. Allerton,* 108 N. Y. 288, 292, 15 N. E. 391. The foregoing decision of the Circuit Court of Appeals for the Eighth Circuit is controlling here, as the contract was made prior to the advent of statehood, to be performed in the Indian Territory, and according to defendant's contention was breached October 20, 1907, and at which time appeals lay directly from the United States Court of Appeals for the Indian Territory to the Circuit Court of Appeals for the Eighth Circuit, and in proper cases to the Supreme Court of the United States. We deem, therefore, that the decisions of those courts,

not controlled by some statute, are properly decisive of the question here raised. In the syllabus of the foregoing case it is said:

"A car company agreed to make and deliver 400 cars to a railway company on or before April 1, 1900, subject to delays from unavoidable contingencies, but that, if it failed to deliver the cars within 'the time specified,' it would forfeit and pay to the railway company, as liquidated damages, $5 per day for every car so delayed. *Held*, 'the time specified,' in the damage clause, meant all the time specified for the delivery of the cars in the earlier part of the contract (that is to say, the time on or before April 1, 1900, plus the time during which the delivery might be delayed by the unavoidable contingencies), and the car company was not liable for the stipulated damages during that time."

Applying the rule there announced to the case at bar, the contract would mean that the bridges were to be completed on or before October 1, 1907, plus the time during which the work might be delayed by the unavoidable contingencies named. Defendant, having delayed furnishing its security until June 20th, thereby postponed the time for the attaching of the penalty provision, which it might have given 23 days earlier, or May 28th, the date on which the contract was signed.

Section 9 did not give to plaintiff four months in which to complete the bridges from the date of the approval of the security, but was fixed simply as a date on which the penalty should attach. But the contract must be construed as a whole. The question is, not what the separate parts of the contract mean, but what the contract means when considered as a whole, and it must be so construed, even if the particular parts are clear and free from ambiguities. 2 Page on Contracts, art. 1112.

The penalty provided for could not attach so long as the completion of the contract was delayed on account of the elements or from causes unavoidable and beyond the control of the first party, and if delays in fact occurred, and it is not denied, and were of the class from which, by the contract, plaintiff was relieved, then the time for the fulfillment of the contract would be extended for a period not less than that caused by such delay, and the penalty would not attach during the period

of excusable delay, as provided in section 4. Any other con-
struction would lead to the conclusion that the penalty was to
attach outright October 20th, regardless of the happening of
contingencies of the class named, and this in the face of the fact
that the party of the first part, by the contract, as we construe
it, sought to relieve itself from possible damages that might
accrue from its failure to complete the bridges at the time fixed
on account of these possible delays. In *Pressed Steel Car Co.
v. Eastern Ry. Co., supra,* it was said:

"It demanded and secured this stipulation for the purpose
of relieving itself from the liability for damages which it might
incur, if, without this agreement, it was prevented by matters
beyond its control from making its deliveries by April 1, 1900.
In the face of this fact, is it reasonable to suppose, is it prob-
able, that at the same time that it insisted upon and obtained
this stipulation to relieve itself from possible damages that might
accrue from its failure to deliver on account of these possible
delays it also agreed to pay to the railway company $2,000 per
day for every day that the delivery of the cars might be post-
poned by the happening of these unavoidable contingencies, and
a proportionate amount for the like postponement of the delivery
of every car? A negative answer seems to be the more rational
reply to this question. An agreement by a party to pay damages
for events beyond its control against which it has already stipu-
lated is certainly an unusual contract, out of the ordinary course
of business, and unlikely to be made by a party of ordinary
prudence and sagacity."

In *United States v. Gleason,* 175 U. S. 588, 20 Sup. Ct. 228,
44 L. Ed. 284, it was said by the court:

"In the cases at bar the contracts in terms provide that
additional time may in writing be allowed 'for the completion of
the work if prevented therefrom by freshets, ice, or other force
or violence of the elements,' and by no fault of his own, not
that such additional time may or may not be allowed as the
engineer in charge may determine, but that 'such additional
time may in writing be allowed' as in his judgment 'shall be just
and reasonable.' The language taken together leaves no discre-
tion in the officer except in respect of the additional time to
be allowed, and even that, the contract provides, 'shall be just
and reasonable.' The claimants in effect agreed that no addi-
tional time should be allowed them except on condition that

they were prevented from the completion of the work (1) by freshets, ice, or other force or violence of the elements; and (2) by no fault of their own; and to hold, when these conditions are present, that it is within the discretion of the engineer in charge to say whether any or no additional times may be allowed, would be to eliminate that mutuality essential in conscionable contracts."

The language of the contract was clearly intended as a protection to the party of the first part against hardships, the result of agencies beyond its control. This it had a right to and did incorporate in this contract with defendant. *Dermott v. Jones*, 2 Wall. 1, 17 L. Ed. 762; *Texas & St. L. R. Co. v. Rust et al.* (C. C.) 19 Fed. 239; *Mahoney et al. v. St. Pauls Church*, 47 La. Ann. 1064, 17 South. 484; *Milliken et al. v. Keppler et al.*, 4 App. Div. 42, 38 N. Y. Supp. 738. In *McDonald v. Patterson & Co.*, 186 Ill. 381, 57 N. E. 1027, it was said in the syllabus:

"Under a contract providing for a certain sum per day to be paid by the contractor as damages for delay, except where such delay is caused 'by the unusual action of the elements or otherwise,' the contractor is not liable for delay on account of events which would render work impracticable and which he could not control."

The question of whether or not the completion of the bridges on or before October 1, 1907, was delayed on account of the violence of the elements or from unavoidable causes beyond the control of the first party, is a question of fact. If the delay was properly attributable to one or both of the contingencies named, then plaintiff should prevail, but, if the delay was not the result of one or both of said contingencies, then it would be chargeable on account of such inexcusable delay. In *Coos Bay v. Nosler*, 30 Ore. 547, 48 Pac. 361, it was said:

"The defendant stipulated what should be considered cause for delay in completing the road as required, and by this stipulation he must be bound; and, if any delay has been caused by reason of procuring the rights of way, collection of Coos county, or Roseburg subsidy, or other just cause, plaintiff should have the benefit of such delay, and the time thereof added to the time fixed for completion to Myrtle Point, and the result would fix

the stipulated time of completion. The jury is very properly the judge of whether any and what delay had been caused by such hindrances."

In this case all the evidence offered by the plaintiff for the purpose of proving the fact that the delays in completion of all the bridges were caused by the unavoidable contingencies named in the agreement was rejected by the court below on the ground that the contract provided to the same extent for excusable as for inexcusable delays. This, as we have seen, was in our opinion an erroneous construction of the contract. *Pressed Steel Car Co. v. Eastern Ry. Co., supra.* Thus it appears that the errors committed by the trial court in the above case arose in the exact manner in which they arose in the case under consideration. The effect was to preclude the plaintiff from an opportunity to have adjudicated the only issue tendered by the pleadings.

Having thus concluded, a consideration of the other questions is rendered unnecessary. It was error in the court below to exclude the depositions of H. P. Treadway, John Luikard, R. S. Manley, and Joseph Hottendorf, for the reasons assigned, for which the judgment of the trial court is reversed, and a new trial directed, with instructions to proceed further in accordance with the views herein expressed.

By the Court: It is so ordered.