WESTERN HARDWARE & MFG. CO. v. BANCROFT-CHARNLEY
STEEL CO.

(Circuit Court of Appeals, Seventh Circuit.   May 6, 1902.)

No. 822.

1. CONSTRUCTION OF CONTRACTS—SALE OR MANUFACTURE OF GOODS—SITUATION
OF PARTIES.

Plaintiff and defendant entered into contracts by which plaintiff
agreed to buy, and defendant to sell and deliver, certain quantities of
round and angle iron, to be delivered from time to time as specified by
plaintiff, but all prior to a fixed date. The contracts contained a pro-
vision that defendant should not be liable for any loss or damage aris-
ing from nonfulfillment by reason of fire, strikes, etc., and a further and
separate provision that "the sellers are permitted, if they desire, to
transfer this contract to any manufacturers of reputable standing." De-
fendant was the owner of an iron-mill, and its business was the manu-
facture of iron such as that covered by the contracts. Held, that the
contracts were to be construed with reference to such known facts, and
were contracts for the manufacture and sale of goods, and not merely
of bargain and sale; that, on the destruction of defendant's mill by
fire before the contracts had been fully performed, it was absolved un-
der their terms from further performance, and was not required to pur-
chase the iron elsewhere, or to transfer the contracts.

In Error to the Circuit Court of the United States for the Northern
Division of the Northern District of Illinois.

Frank M. Hoyt and Chas. E. Kremer, for plaintiff in error.
Charles S. Babcock, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN,
District Judge.

BUNN, District Judge.   This action was brought by plaintiff in
error to recover damages for the breach of three certain contracts in
writing, in the alleged failure of the defendant in error to deliver cer-
tain iron as therein agreed.   The making of the contracts and the
failure to deliver are admitted, but the defendant in error alleges as
defense, under a certain provision of the contracts, the destruction
of its mill in Chicago by fire where it was contemplated by the con-
tracts the iron should be manufactured.   The case was tried by the
court without a jury, and a finding of facts and conclusions of law
rendered by the court in favor of the defendant in error.   On Jan-
uary 30 and February 3, 1899, the plaintiff and defendant below en-
tered into three separate written agreements covering the purchase
and sale of certain rounds and angles of iron.   The rounds covered
200 tons of ⅜-inch rounds, mill lengths, at $1.15 per hundred pounds.
The angle contracts covered 500 tons of angles of three different
sizes, at $1.10 per 100 pounds.

The provisions of the contracts, so far as they are material to the
consideration of the case, are as follows:

Bancroft-Charnmey Steel Company agrees to sell, and the West-
ern Hardware Manufacturing Company of Milwaukee agrees to buy,
the following goods, at the prices and upon the terms named there-
in; all goods to be delivered free on board cars at Chicago; all

goods to be specified for two weeks before shipment (this provision, however, had relation to angle contracts only); all goods to be shipped prior to June 30, 1899, the exception below permitting.

Exceptions: Seller shall not be liable for any loss or damage arising from nonfulfillment of the contracts by reason of fire, strikes, manufacturing contingencies, or any cause beyond their control. The sellers are permitted, if they desire, to transfer this contract to any manufacturers of reputable standing.

These, we think, are all the provisions of the contracts that bear upon the questions at issue. The court found all these facts, and further found that, after the making of the contracts and on or about April 15, 1900, the defendant consolidated, under the laws of the state of Illinois, with the Garden City Wire & Spring Company; that thereafter the contracts in question, in so far as they were carried out, were executed by the last-named corporation; that the defendant company, at the time of making contracts and thenceforth to its consolidation with the Garden City Wire & Spring Company, owned and occupied but one mill, and the last-named company acquired the mill by the consolidation, and it was the only mill owned by the last-named corporation capable of, and fitted for, the manufacture of the goods described in the contracts, and that such mill had a capacity sufficient to have executed the contracts had it not burned, but that said mill was destroyed by fire on May 19, 1899; that by such fire the defendant and its successor, the Garden City Wire & Spring Company, were prevented from manufacturing any more goods as provided in the contracts, and immediately notified plaintiff of the fire, and canceled the contracts; that said consolidated company immediately proceeded to rebuild the mill, but that the same was not finished until the April following, and could not have been finished by June 30, 1899, which was the time fixed by the parties for the completion of the contracts to deliver. The court found as a conclusion of law that the contracts were contracts for the manufacture of goods, and not for bargain and sale, and that the defendant was not bound to purchase the goods elsewhere for delivery to the plaintiff, nor obliged to order the same manufactured elsewhere, and that the happening of the fire was a contingency which, under the terms of the contracts, absolved the defendant from further performance. The evidence shows that goods were being continuously ordered by the plaintiff and manufactured and delivered by the defendant from the time of the making of the contracts to the destruction of the defendant's mill, but that only a portion of the goods contracted for were ever delivered.

The case turns upon the proper construction to be given to the contracts,—whether they were executory contracts of bargain and sale merely, or were contracts for manufacture and sale, as found by the court. To give proper construction to the contracts, it is evident that the court should look to all their provisions, as well as the situation of the parties, at the time of their making, in case of any doubt. If we were to look only to the opening clause of the contracts, whereby the defendant company agrees to sell and the plaintiff agrees to buy, it would no doubt appear to be a simple case

of executory bargain and sale. But when we look to the other provisions of the contracts, and to the situation of the parties, it would just as clearly and more conclusively appear that the contracts were contracts for manufacture and delivery upon specific orders made from time to time by the plaintiff. Doyle v. Teas, 4 Scam. 202; Wilson v. Roots, 119 Ill. 379, 10 N. E. 204. The defendant had an iron-mill in Chicago for the manufacture of the kind of iron rounds and angles called for by the contracts. That was its business. It was not engaged in the commercial business of buying and selling iron. It had no place of business for such a purpose. These facts were known to both parties, and the contracts were made with reference to that situation. The iron called for must be manufactured and could not be had in the open market. The contracts provided that, in case of being prevented by fire, the defendant should not be liable upon the contracts. This provision would have a much more rational application to persons engaged in the manufacture of the iron to order than to a person simply engaged in the business of buying and selling. If the goods were not to be manufactured, but could be had in the open market, there would be no great call for such an exemption of liability in the contracts. But, in case of destruction by fire of its mill where it was contemplated the iron should be manufactured, such a provision would be quite pertinent and applicable. Then the last provision in the contracts seems quite significant upon this question, that the sellers were permitted, if they desired, to transfer the contracts to any manufacturer of reputable standing. This provision is wholly independent of the one containing exemption from liability on account of fire or other contingency preventing a fulfillment of the contracts, and tends quite conclusively to show that it was contemplated that the goods should be manufactured to order at the defendant's mill. It is contended by the appellant that, in the event of inability to fulfill the contracts on account of fire or other inevitable contingency, it was the duty of the seller to transfer the contracts to some other manufacturer. But we do not so understand this clause. It is a mere option or privilege given in any case whether any such contingency occurred or not, and is quite independent of the provision against liability on account of destruction by fire. Such a provision as this in a contract is entirely reasonable, is within the province of the parties to make, and should receive a reasonable construction to effect the purpose intended. If any authority was required for this rule, the following precedents seem quite sufficient: Allen v. Quann, 80 Ill. App. 547; McDonald v. Patterson, 186 Ill. 381, 57 N. E. 1027; Milliken v. Keppler (Sup.) 38 N. Y. Supp. 738; Davis v. Mining Co. (Mass.) 49 N. E. 629; Railroad Co. v. Bowns, 58 N. Y. 573.

We think the conclusions of law found by the court below fully sustained by the findings of fact, and that the judgment should be affirmed. Judgment affirmed accordingly. Affirmed.