FOX et al. v. TYLER et al.

(Circuit Court of Appeals, Eighth Circuit. April 29, 1901.)

No. 1,368.

**1. CONTRACTS—CONSTRUCTION—GENERAL RULES.**
The situation of the parties to a contract when it is made, and its subject-matter and purpose, are material to determine the intention of the parties, and the meaning of the terms they used; and, when these are ascertained, they must prevail over the dry words of the stipulations.

**2. SAME—IMPLIED MODIFICATION—ESTOPPEL.**
A merchant, having made a general assignment, entered into a written contract with certain of his creditors by which they agreed to grant extensions, and to induce his other creditors to do the same. The contract provided that the debtor should execute and deposit notes to the creditors, with a surety, which should become valid obligations only when all creditors should agree to grant the same extensions, in which case the assignment should be canceled, and the goods returned to the debtor. The creditor having charge of the negotiations sent to the custodian other notes for execution, and wrote that all except two small creditors had assented, and suggested that it was not necessary to wait for their assent, since, if it was refused, their claims could be paid. This letter was shown to the debtor and his surety, who was his brother, and also the assignee, and they thereupon executed the remaining notes, which were delivered to the creditors, canceled the deed of assignment, and the goods were returned to the debtor, who sold the same. *Held*, that by such action they impliedly agreed to a modification of the written contract, requiring the assent of all the creditors, and, having thereby obtained the goods, could not deny the validity of the notes because of the nonassent of the two creditors.

In Error to the United States Court of Appeals in the Indian Territory.

W. R. Fox was a retail merchant doing business at Wayne, in the Indian Territory. He purchased a stock of merchandise from various wholesale houses on credit, and, when his bills therefor matured, he was not able to meet them, and on his own motion executed a deed of assignment to his brother, F. M. Fox, on his stock of goods, for the benefit of his creditors. Before the assignee qualified, some of his mercantile creditors appeared on the scene, with the result that it was agreed that his creditors would grant him an extension of four, eight, and twelve months upon he and his brother, F. M. Fox, executing their joint notes for the sums due his several creditors, indorsed by J. E. Colbert. As all his creditors were not present and consenting to the arrangement, it was agreed that the written agreement hereinafter set out should be placed in the hands of A. D. Hawk, cashier of the Chickasaw National Bank, and, when the assent of the creditors to the extension had been obtained, and Mr. Hawk was advised of that fact, he was to have W. R. Fox and F. M. Fox execute notes in accordance with the agreement, and send them to the creditors, and the deed of assignment was to be annulled, and the stock of goods returned to W. R. Fox. W. F. Miller, the representative of one of the creditors, was to see to obtaining the assent of the absent creditors to the arrangement. He procured the assent of all the creditors except two, touching which he wrote Mr. Hawk on the 28th of August as follows:

"St. Louis, August 28th, 1896.

"Mr. A. D. Hawk, Cashier Chickasaw Nat'l Bank, Purcell, I. T.—Dear Sir: Herewith please find inclosed notes properly made out for the claims of the Raney-Alton Mercantile Co., Dowden-Williamson Grocer Co., Turner & Jay, Richards-Conover Hardware Co., Kingman-Moore Implement Co., and Barton Bros. This includes all of the claims or accounts against W. R. Fox, with the exception of a small claim at Chicago, and one at Readsville, N. C. I

will write to these parties to-day, and send them a copy of the agreement, and hope within a few days to receive a favorable reply from them. This, however, will not prevent the signing of the inclosed notes by W. R. Fox and F. M. Fox and J. E. Colbert, for, in the event that these parties at Readsville, N. C., and Chicago do not agree to the settlement, they could be paid off either by Fox or the creditors."

On the same day he wrote F. M. Fox as follows:

"St. Louis, August 28th, 1896.

"Mr. F. M. Fox, Attorney at Law, Purcell, I. T.—Dear Sir: I have just written to Mr. Hawk, and inclosed to him notes for the balance of the accounts, to be signed by yourself and W. R. Fox and J. E. Colbert. All of the parties have signed the agreement with the exception of the parties at Readsville, N. C., and the one at Chicago, to whom I will write to-day, and will send a copy of the agreement for their signature. This, however, need not prevent the signing of the notes, for, in the event that they refuse to come into the agreement, these two small accounts could be paid off by you or the creditors, if it is found to be absolutely necessary to do so. I would like very much for you to sign these notes at your earliest convenience, so that Mr. Hawk can forward them to the parties to whom they are made payable.    Yours, very truly,    W. F. Miller."

On the receipt of these letters, and after Mr. Hawk had shown his letter from Mr. Miller to the two Foxes, they executed their notes to the creditors, including the note in suit, and delivered them to Mr. Hawk, who forwarded them to the creditors, and thereupon the deed of assignment was canceled, and the stock of goods returned to W. R. Fox, who sold them out, and, without paying his creditors the proceeds, left the country. The following is a copy of the written agreement referred to:

"It is hereby agreed by and between Trounstine Bros. & Co., Tennant-Stribling Shoe Co., the Johnson & Larimer Dry-Goods Co., Southern Mfg. Co., and Tyler & Simpson, of the first part, and F. M. Fox and W. R. Fox, of the second part, that notes signed by parties of the second part, and payable to parties of the first part, of this date, are not to be considered as valid notes unless all of the creditors of W. R. Fox agree to grant said W. R. Fox an extension of four, eight, and twelve months in settlement of his indebtedness to them. When all creditors have so agreed, then the notes aforesaid are to be still further indorsed by J. E. Colbert. Pending the settlement said notes are to be deposited with A. D. Hawk, cashier of the Chickasaw National Bank.    Tennent-Stribling Shoe Co., by F. M. Miller.

"The Johnson Larimer Dry-Goods Co., by O. P. Taylor, Asst. Sec.

"Trounstine Bros. & Co., per Calloway.

"Tyler & Simpson, per Calloway.

"Southern Manfg. Co., per Humphrey.

"F. M. Fox.

"W. R. Fox."

This action was brought before a United States commissioner in the Indian Territory, who is invested with the jurisdiction of a justice of the peace, on the four-months note payable to the plaintiffs for $52.33. The plaintiffs recovered judgment before the commissioner, from which judgment the defendants appealed to the United States court for the Southern district of the Indian Territory, where the plaintiffs had the judgment. The defendants then appealed the case to the United States court of appeals for the Indian Territory, which affirmed the judgments of the lower courts. 53 S. W. 462. Thereupon the defendants brought the case into this court by writ of error. The defense set up in the answer is that at the time Mr. Hawk received and sent the Fox notes to the creditors all of Fox's creditors had not assented to the extension. The specific allegation of the answer is: "Defendants allege that at the time said notes were so fraudulently and wrongfully delivered by said Hawk to plaintiffs and the other creditors of the said W. R. Fox as aforesaid there were divers and various other creditors of the said Fox who had not agreed to the extension of time as aforesaid, all of which was well known to the said Hawk."

Paul Reiss (J. W. Hocker, Zol. J. Woods, Mr. Davidson, and Mr. Carter, on the brief), for plaintiffs in error.

George W. Lubke (J. F. Sharp, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In all contracts many things are left to implication. It was necessarily implied in the contract quoted that Fox would furnish the list of his creditors. He alone knew who his creditors were. It is equally obvious that when the contract speaks of "all creditors" it means all mercantile creditors, and does not refer to or include the little bills owing to the butcher, baker, and grocer for current supplies for his table. In Kauffman v. Raeder (at the present term) 108 Fed. 171, Judge Sanborn, speaking for the court, said:

"The situation of the parties when the contract was made, its subject-matter, and the purpose of its execution are material to determine the intention of the parties, and the meaning of the terms they used, and that, when these are ascertained, they must prevail over the dry words of the stipulations."

When the subject-matter of this contract is considered, and the relation of the parties, it is clear that the propositions we have stated are applicable to this case. Fox did furnish to those of his creditors with whom he entered into this arrangement a list of his mercantile creditors. There is no contention but what the assent of all these creditors except two was obtained before the defendants executed their notes, and they knew when they executed and delivered their notes and canceled the deed of assignment and took possession of the goods that these two creditors had not been heard from. By their action they necessarily assented to the suggestion contained in Mr. Miller's letter to Mr. Hawk and in his letter to F. M. Fox, namely, that, if these two creditors "refused to come into the agreement, these two small accounts could be paid off by you [Fox] or the creditors if it is found to be absolutely necessary to do so." When the defendants, with full knowledge of these suggestions, executed and delivered their notes, canceled the deed of assignment, and took possession of the goods, they must be held to have accepted the suggestion contained in the letters, and to have modified their written agreement accordingly. Fox was anxious to have the stock of goods restored to him, but the creditors would not consent to a cancellation of the deed of assignment and the restoration of the goods until the notes mentioned in the contract had been executed and delivered. The assent of the creditors to the cancellation of the deed of assignment, which secured to them the value of the goods, and the restoration of the goods to Fox, was ample consideration for Fox waiving the assent of two of his small creditors to the extension.

The answer does not specify the name or the amount of the debt of a single creditor who did not assent to the extension, nor does it aver that any creditor did not in fact grant the extension, or that any creditor demanded payment of his debt, or sued or threatened to sue therefor, before the expiration of the extension agreed upon, or that

the defendants were in any manner damnified by the failure of any creditor to agree to the extension, nor do they prove any of these things. Manifestly, such an answer sets up no defense. Moreover, the defendants having, with full knowledge of all the facts as to what creditors had assented to the extension, executed and delivered their notes and demanded and accepted all the benefits which were to accrue to themselves under the contract, namely, a cancellation of the deed of assignment and the possession of the stock of goods, which they thereafter sold, and appropriated to their own use, they are clearly estopped from setting up the attempted defense. Upon the record before this court the defense has no foundation in law or fact, and the judgment of the United States court of appeals for the Indian Territory and the judgment of the United States court for the Southern district of the Indian Territory are severally affirmed.