## UNION TRUST CO. *et al.* v. SHELBY DOWNARD ASPHALT CO.

No. 5088. Opinion Filed February 8, 1916.

(156 Pac. 903.)

1. **CONTRACTS—Construction—General Rules.** When a contract has several stipulations, every part and division in it should be considered together, and so construed as to be consistent with every other part, and, if possible, to make every part effective.

2. **SAME—Intent of Parties.** The chief object in construing contracts is to ascertain the intention of the contracting parties.

3. **SAME—Fairness.** Where a contract is fairly susceptible of two constructions, the one that makes it fair, reasonable, and such as prudent men would naturally execute, should prevail.

4. **SAME—Written Instruments.** Where a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.

(Syllabus by Watts, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by the Union Trust Company and others against the Shelby Downard Asphalt Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions.

*Ames, Chambers, Lowe & Richardson,* for plaintiffs in error.

*Stuart, Cruce & Cruce* and *Wm. G. Davisson,* for defendant in error.

Opinion by WATTS, C. This action was begun in the district court of Oklahoma county, by Union Trust Company, one of the plaintiffs in error, one of the plaintiffs below, hereinafter called plaintiffs, against Shelby Downard Asphalt Company, defendant in error, defendant below, hereinafter called defendant, to recover the sum of $2,659.67, alleged to be due it by virtue of a certain written contract purporting to have been executed by said parties on March 6, 1911.

Said contract is in words and figures as follows:

"This agreement made and entered into this 6th day of March, 1911, by and between the Union Trust Company, a corporation organized under the laws of Oklahoma, party of the first part, and Shelby Downard Asphalt Company, a corporation organized under the laws of Oklahoma, party of the second part, witnesseth:

"That, whereas the city of Oklahoma City, Oklahoma, contemplates the letting of a contract for the paving and otherwise improving Sixteenth street in said city from the east line of Young boulevard to the east line of Linwood boulevard; and whereas, the party of the second part is proposing to submit a bid to the said city for the construction of said improvements; and whereas, it is

estimated that the contract price for said improvements will be approximately fifty thousand four hundred and twenty dollars ($50,420.00), and the cost of the engineering, printing, appraising and other incidental expenses will be approximately seventeen hundred sixty and 60/100 dollars ($1,760.60) ; and whereas, the said city proposes to issue paving bonds to the said party of the second part in the event it secures said contract, retaining the individual tax bills as provided by the laws of the State of Oklahoma, said bonds to bear interest at the rate of six per cent. (6%) per annum: Now, therefore, it is hereby agreed between the parties as follows :

"First. That in the event the party of the second part secures said contract, it hereby agrees to take said bonds from the city in payment for labor and material in executing said contract, and to sell said bonds to the party of the first part for thirty-five thousand dollars ($35,000.00)—interest not to be figured—and the party of the first part hereby agrees to buy said bonds from the party of the second part at said price.

"Second. It is further agreed that the party of the second part shall likewise take paving bonds to be issued by said city for the cost of the appraising, engineering, printing and other incidental expenses as hereinbefore recited, and that the second party shall sell said bonds to the party of the first part for the sum of eighty-five per cent. (85%) of their par value (interest not to be figured) and the party of the first part agrees to buy said bonds from the party of the second part and to pay said price therefor.

"Third. It is further mutually agreed that as said work progresses and the city engineer of Oklahoma City issues certificates therefor in the usual form in use in said city, covering the labor and material, that the party of the first part shall advance to the party of the second part on said estimate seventy per cent. (70%) of their face value at the contract price and that the party of the sec-

ond part shall assign to the party of the first part from time to time the estimates issued by the city engineer.

"Fourth. It is further agreed that if and when said party of the second part procures said contract, that it will give to the first party an order on the proper officials of the city for the delivery of the first part of said bonds when they have been issued as provided by law.

"Sixth. It is mutually agreed that the party of the first part shall provide funds out of which the party of the second part may deposit with the city at the time of submitting its bid a certified check for ($1,600.00) sixteen hundred dollars, and that this amount shall be returned to the party of the first part immediately in the event the party of the second part does not procure the contract. In the event the party of the second part shall procure the contract, this sum shall be returned to the party of the first part as soon as the contract with the city has been entered into and bond given by the party of the second part for its performance.

"Seventh. The party of the second part further agrees that as soon as it procures said contract from the city, that it will give to the party of the first part a bond in the sum of ten thousand dollars ($10,000.00) with the Southwestern Surety Insurance Company, a corporation, organized under the laws of Oklahoma, as surety, conditioned that it will faithfully comply with all the terms and provisions of this contract, and the party of the second part does hereby agree and bind itself to complete said contract with the city according to its terms and to carry out all of the provisions of this contract and to furnish all the labor and material necessary for the completion of said improvements, free and clear from all liens or claims of every kind whatsoever.

"Eighth. It is mutually agreed that the party of the second part contemplates the use of Ardmore Asphalt and that if this material is not accepted by the city of Oklahoma City, and if bonds are not issued for said im-

provements, that then and in that event the party of the second part shall refund to the party of the first part the sixteen hundred dollars ($1,600.00) advanced as hereinbefore provided, and any other sums that may be advanced hereunder by the party of the first part, together with interest thereon at ten per cent. (10%) per annum, but that the party of the second part shall not be liable for damages in any other way.

"In witness whereof the parties hereto have hereunto set their hands in duplicate on the date above named."

The court below rendered judgment against plaintiffs for the sum of $2,000.41, in favor of defendant, upon its cross-petition, from which judgment the plaintiffs appeal to this court.

Plaintiffs' contention is: First, Under the agreed statement of facts judgment should have been rendered for plaintiffs. The agreed statement of facts is as follows:

"It is further stipulated and agreed that, after the execution of said contract between plaintiff and defendant, the said defendant entered upon the construction of the improvements heretofore mentioned, and during the progress of the work, and after it had been completed, plaintiff paid to defendant on estimates furnished by the city engineer, on the improvement bonds, $32,784.15.

"It is further stipulated and agreed that the said defendant completed said contract of improvement June 30, 1911, and on September 11, 1911, was awarded improvement bonds in the sum of $45,497.60, being the total bonds issued for said improvements, and bonds for engineering, printing, appraising and other incidentals in the sum of $1,647.44.

"It is further stipulated and agreed that after the completion of said work, the plaintiff was required to and

did pay to the city for said bonds for engineering, printing, appraising and other incidentals the sum of $1,647.44, and received all of the bonds issued in said district for improvement and for engineering, printing, appraising and other incidentals.

"It is further stipulated and agreed that the plaintiff has paid defendant for said improvement bonds the sum of $32,748.15, and has received improvement bonds in the amount of $45,497.60, and has refused and still refuses to pay the defendant the difference between $32,-784.15, and the $35,000 mentioned in the contract.

"It is further stipulated and agreed by and between the plaintiff and defendant, that all of the improvement bonds received by plaintiff for said improvement, amounted in the aggregate to $45,497.60 for material and labor, and $1,647.60 for engineering, appraising, etc., and that said defendant has refused and still refuses to furnish plaintiff bonds representing the difference between approximately $50,420 and $45,497.60.

"It is further stipulated and agreed that there is due plaintiff from the defendant on the bonds for engineering, etc., the difference between $1,432.00 and $1,647.44.

"It is further stipulated and agreed that the final estimate of the said improvement was made by the city engineer and approved by said city June 30, 1911, and that the last payment made by plaintiff to defendant on said bonds was the sum of $1,500, paid August 15, 1911.

"It is further stipulated and agreed that the defendant delivered a written order to the city clerk of Oklahoma City, Oklahoma, March 24, 1911, to deliver all of said bonds to plaintiff when issued.

"If material it is agreed that the market value of said bonds at the time the same were delivered was one hundred cents on the dollar."

Second. That the court erred in excluding the testimony offered on behalf of the plaintiffs on the ground

of incompetency. The bone of contention between the able counsel that represent the parties to this controversy is in constring the recital that estimates the contract price of said improvements to be approximately $50,420, and the first and third paragraphs of said agreement. The plaintiff Union Trust Company contends that it was to pay 70 per cent. of the face value of the bond issue for labor and material. The defendant contends that plaintiffs were to pay the flat sum of $35,000 for said bond issue, regardless of the amount of said issue.

The third paragraph, standing alone, sustains the contention of plaintiffs. The first paragraph, standing alone, sustains the contention of the defendant. But each paragraph is only a part of the entire contract, and all must be considered together, and each paragraph, if possible, and every part of the contract must be made effective, as was held in *City of Tecumseh v. Burns,* 30 Okla. 503, 120 Pac. 270, in which the court said:

"In arriving at the intention of the parties to a contract, the whole instrument must be read together, and, if possible, every part thereof should be made effective, giving to the words and terms thereof their ordinary and generally accepted use."

It was held in the case of *Kansas City Bridge Co. v. Lindsay Bridge Co.,* 32 Okla. 31, 121 Pac. 639, that:

"The intention of the parties must be deduced from the entire agreement, and not from any part or parts of it, because where a contract has several stipulations, it is plain that the parties agreed that their intention was not expressed by any single part or stipulation of it, but by every part and provision in it, considered together, and so construed as to be consistent with every other part."

The chief object in construing contracts is to ascertain the intention of the contracting parties, and this is to be ascertained from the writing alone, if possible. Section 949, Rev. Laws 1910, reads as follows:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

Can the intention of the contracting parties herein be ascertained from their written agreement, herein mentioned? It will be obeserved from the recitals that at the time these parties entered into said agreement, Oklahoma City was contemplating the letting of a contract for the paving and otherwise improving Sixteenth street, in said city, from the east line of Young boulevard to the east line of Linwood boulevard, and that the defendant intended to submit a bid to said city for the construction of said improvements. It was estimated that the contract price for said improvemnets would be approximately $50,420, and the cost of engineering, printing, appraising, and other incidental expenses would be approximately $1,760.70; and said city intended to issue paving bonds to the defendant in the event it should secure said contract. The first paragraph of the agreement states that in the event the defendant should procure said contract, it was to take bonds from the city in payment for labor and material in executing said contract, and to sell said bonds to plaintiff for $35,000. In the second paragraph defendant agreed to sell plaintiff the appraising, engineering, and printing bonds at 85 per cent. of their par value. The third paragraph of said agreement provides that the plaintiff should pay 70 per cent. of their face value of the contract price to cover

labor and material, as the work progressed, and that the certificates issued by the city engineer therefor should be assigned by the defendant to the plaintiff.

Section 625 of Rev. Laws 1910 provides that:

"The mayor and council shall examine all bids received, and   *   *   *   award the contract to the lowest and best bidder,   *   *   *   the aggregate amount of which contract shall in no case exceed the aggregate estimate of cost submitted by the engineer with the plans and specifications.   *   *   *"

The fourth paragraph of said agreement required the defendant, as soon as it procured the contract, to give to plaintiff an order on the proper officials of the city for the delivery of the bonds, when they were issued, as provided by law.

The fifth paragraph required the defendant to complete said improvements in time for the assessments to be placed on the tax rolls for the year 1911, and this provision was to be the essence of the contract.

The sixth paragraph required the plaintiff to provide $1,600, out of which the defendant should deposit with the city a certified check, at the time of submitting its bid, and this should be returned to plaintiff immediately, if the defendant failed to procure the contract, and if defendant should procure the contract, this $1,600 should be returned as soon as the bond was given for its performance.

The seventh paragraph required the defendant to give plaintiff a $10,000 bond, with the Southwestern Surety Insurance Company as surety, conditioned that it would faithfully comply with all the provisions of the contract. It also required the defendant to complete the

contract with the city according to its terms, and to carry out all the provisions of the contract.

In the eighth paragraph the parties make use of the following language:

"It is mutually agreed that the party of the second part contemplates the use of Ardmore asphalt, and that if this material is not accepted by the city of Oklahoma City, and if bonds are not issued for city improvements, that then and in that event the defendant shall refund the $1,600 advanced as hereinbefore provided, or any other sums that may be advanced hereunder, together with interest at 10%."

Paragraph eight shows that defendant did not intend to enter into the contract with the city unless it would be permitted to use Ardmore asphalt; then it is evident that it was not the intention of defendant to make a profit out of the contract, but the able counsel think that it is unreasonable to believe that defendant in paragraph two required 85 per cent. for appraising and engineering bonds, which were approximated at $1,760.60, and take the ridiculous price of 70' per cent. for the work and material bonds, which were estimated at $50,420. This would be sound logic, had profit been the inducement of defendant in making the contract with the city. But this logic is overturned even on the flat sum theory by the defendant entering into the contract with the city for the sum of $45,497.60, which, on the flat sum theory, would be less than 80 per cent. In other words, it lacks $3,-675.96 of being 85 per cent. But this does tend to show it was not profit that induced the defendant to make the contract with the city, but that it was the use of Ardmore asphalt.

Paragraph six shows that defendant did not have funds out of which to deposit with the city at the time of submitting its bid a certified check.

Paragraph three shows that the 70 per cent. to be advanced by plaintiff was to be applied in the payment of labor and material, and had the labor and material bills not been paid as the work progressed, the defendant would have been unable to carry out its contract with the city, as paragraph six shows defendant had no funds of its own.

Since paragraph six reasonably indicates that defendant did not have the $1,600 required by the city in order to procure the contract with the city, then we must conclude that defendant required the 70 per cent. to be advanced, and also that this amount would pay the labor and material bills according to its estimate, for if this amount would not pay the labor and material bills, where was the deficit to come from? Certainly not from plaintiffs, for 70 per cent. was all they were required to pay during the progress of the work. Therefore we must conclude that defendant believed that 70 per cent. of the contract price would pay the labor and material bills, and it would not lose anything in the deal, and that it would receive the benefit to be derived by reason of the use of Ardmore asphalt. The benefit to be derived by reason of the use of Ardmore asphalt is not disclosed in the agreement, but that it was to derive some benefit thereby is a natural supposition, since it would not have made the contract with the city had the Ardmore asphalt not been acceptable to the city.

The agreement from inception to close shows that at the time it was made the defendant had not entered into a contract with the city, but the recital shows that

defendant was proposing to submit a bid to the city for the construction of said improvements. The recital also shows that the contract price for improvements was estimated approximately at $50,420; the cost of engineering, printing, appraising, and other incidentals was approximated at $1,760. The law required the city to award the contract to the lowest and best bidder, but the aggregate amount of the contract in no case to exceed the aggregate estimate of cost submitted by the engineer. Therefore the city could not have awarded the contract to the defendant for a higher sum than $50,420, the estimated contract price for said improvements, but it could have awarded the contract to said defendant for said sum, or less, provided defendant was the lowest and best bidder.

The plaintiff, therefore, knew it was not possible for it to receive, under the contract, more than $50,420 for the improvement bonds, and it also knew that the city was required to award the contract to the lowest and best bidder, and that the defendant would have to be the lowest and best bidder in order to procure the contract with the city. The plaintiff could not have known the amount of the bid that the defendant would have to submit to the city in order to procure the contract. Since the amount that the defendant would have to bid was uncertain, and this amount would depend upon the amount bid by competitors, and as there is no limit to the smallness of the amount under the law, no prudent man would have agreed to pay the flat sum of $35,000. On the other hand, $35,000 is exactly 70 per cent. of $50,000, and $50,420 was the approximated contract price, and had the defendant procured the contract with the city at the approximated price, the plaintiff, under the 70 per cent. theory, would have received the bonds at a

little less than 70 per cent. But since that was the highest contract the city could award, under the law, it was not likely to have to pay that amount on competitive bids, and therefore the plaintiff could hardly have expected that the bid would be over $50,000.

In the case of *Kansas City Bridge Co. v. Lindsay Bridge Co.*, 32 Okla. 31, 121 Pac. 639, this court said:

"Where the language of a contract is contradictory, * * * or where the meaning is doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unusual, unfair, or improbable contract."

And:

"The situation of the parties where the contract was made, its subject-matter, and the purposes of its execution are material to determine the intention of the parties, and the meaning of the terms used; and when these are ascertained, they must prevail over the dry words of the stipulation." *Fox v. Tyler*, 109 Fed. 258, 48 C. C. A. 356; *General Elec. Co. v. Jonathan Clark* (C. C.) 108 Fed. 171.

When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, and since we think it possible to ascertain the intention of the parties herein from the written agreement alone, the trial court did right in excluding the proffered testimony.

It is our opinion that the judgment of the lower court should have been for plaintiffs. We therefore rec-

ommend that the judgment be reversed and remanded, and that the trial court be directed to enter judgment in ravor of plaintiffs for the sum of $1,450, which amount, without rehashing the figures, including interest to this date, is approximately correct.

By the Court: It is so ordered.