**FRAZER et al. v. CITY OF ARDMORE et al.**

No. 15050—Opinion Filed Sept. 30, 1924.

**1. Contracts—Intent—Ambiguous Language.**

Where there is ambiguity in the language of a contract, the situation of the parties at the time it was made, its subject-matter and the purpose of its execution are always material to determine the intention of the parties and the meaning of the terms that are used, and when these are ascertained they will prevail.

**2. Same — Construction by Parties Themselves.**

In construing a contract the court may look to the construction placed on it by the parties, and to their acts under it in carrying it into effect, to determine what their intent was when it was entered into.

**3. Same—Judgment Sustained.**

Record in the instant case examined, and held, that, measured by the rules of construction of written contracts, the construction placed upon the contract involved in the instant case by the trial court is correct.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by C. E. Frazer et al. against the City of Ardmore et al., to enjoin the collection of certain paving assessments. Judgment for defendants, and plaintiffs appeal. Affirmed.

Brett & Brett, for plaintiffs in error.

R. B. Brown and G. A. Paul, for defendants in error.

Opinion by FOSTER, C. On April 11, 1923, C. E. Frazer, W. H. Wimberly, Jacob Bodovitz, and Melvina Bodovitz, for themselves and all other property owners in district No. 66 of the city of Ardmore, plaintiffs in error, sued the city of Ardmore and A. L. Cook, defendants in error, in the district court of Carter county, Okla., for an injunction to prevent the collection of certain paving assessments levied under the provisions of ordinance No. 487 of said city, and to enjoin a certification of the assessments to the county treasurer of Carter county. The parties will hereinafter be referred to as they appeared in the trial court.

It was alleged in the petition that the assessments were void because the city engineer submitted an estimate of costs for the improvements; that a contract was let within the estimate, but that the city in levying the assessments under the provisions of ordinance No. 487 assessed the cost of the improvements at a greater sum than the amount specified in the contract. Upon this petition a temporary injunction was granted on the 24th day of May, 1923.

The defendants, the city of Ardmore and A. L. Cook, filed their amended answers, wherein each alleged:

(1) General denial; (2) that plaintiffs' action was not commenced within 60 days after the passing of assessing ordinance No. 487, and was barred by limitations; (3) estoppel and laches on the part of the property owner; and (4) that in cause No.

9872, in the district court of Carter county, entitled Cook v. City of Ardmore, the same parties plaintiff in this action were interveners therein, and that their rights were fully adjudicated in that action.

There was a trial to the court on the 11th day of December, 1923, which resulted in a general finding and judgment in favor of the defendants, vacating and setting aside the temporary injunction theretofore issued and for costs. Motion for a new trial was filed and overruled and plaintiffs bring the cause regularly on appeal to this court upon petition in error and case-made.

There are several assignments of error, but the only proposition seriously discussed is, that the trial court erred in not holding that the assessments were void for the reason that they were levied for a greater amount specified in the contract entered into between the city of Ardmore and the contractor, A. L. Cook.

The record discloses that on March 3, 1922. the city engineer of Ardmore submitted to the mayor and commissioners plans, specifications and estimates for paving street improvement district No. 66, being that portion of Broadway from the east line of (L) street to the east line of (P) street, including all alleys, crossings and street intersections, detailing therein the quantities of the several items necessary to go into the improvement, together with the cost per item amounting in the aggregate, with the advertising and engineering fees, to the sum of $20,076.51.

The plans, specifications and estimates were approved and adopted by the city officials on March 8, 1922, the specifications containing a bidding sheet for the use of prospective bidders. Upon the approval of these plans and specifications bids were called for and the contractor, A. L. Cook, on April 24, 1922, inserted on the bidding sheet, opposite the estimated quantities, the price per unit at which he offered to do the work, and these figures were extended on the bidding sheet so that they amounted in the aggregate to the sum of $19,915.92.

The price per unit filed by the contractor was in all cases equal to or less than the unit price fixed by the engineer in the specifications, and a contract was entered into between the city of Ardmore and the successful bidder, A. L. Cook, by the terms of which the said Cook agreed to perform the work and improvements in accordance with the plans and specifications on file in the office of the city clerk. The specifications were made a part of the contract, and the contract contained a provision that the contractor should receive the sum of $19,915.92, either in cash or in bonds, payable in special assessments levied against the property affected.

The work was performed by the contractor, and on the 23rd day of June, 1922, the engineer submitted the ascertained cost for the completed improvement, showing the actual quantities and the price per unit as given in the contract, the total of which amounted to the sum of $23,730.14.

Upon this final basis of cost, appraisers were appointed whose report was on the 28th day of July, 1923, approved and ordinance No. 487 was enacted, assessing and taxing the property abutting on said improvement in the sum of $23,730.14.

Protests against assessing ordinance No. 487 were lodged by the taxpayers with the city council, and the city attorney was directed to draw an ordinance repealing ordinance No. 487, but it seems that the repealing ordinance was never acted upon for the reason that the property owners concerned in improvements on Twelfth avenue in the city of Ardmore had instituted an action similar in character to the one at bar, in which they complained that the contract price in that district was $45,989.56, whereas the price assessed by the assessing ordinance for the improvement was $47,011.23, and sought to enjoin the spreading of the assessments based upon the assessing ordinance, and it was deemed advisable to defer action until there had been a determination of the matters involved in said action. This action later resulted in a judgment adverse, to the property owners involved, and no further action was ever taken by the city council toward repealing ordinance No. 487.

Thereafter, on the 24th day of November, 1922, the city authorities of Ardmore, having refused to issue bonds to the contractor in payment of the work, the contractor, A. L. Cook, brought an action in mandamus to compel the delivery of these bonds. The plaintiffs in the instant case intervened and filed answers, but their answers were stricken from the files upon the ground that they were not proper and necessary parties to the action, and a judgment granting a peremptory writ of mandamus was finally rendered in the case on the 6th day of April, 1923, upon which no appeal has been prosecuted.

The record further shows that the defendant, city of Ardmore, had previously at different times made contracts with A. L. Cook for paving its streets, and that in these contracts, bidding sheets, plans and specifications were prepared by the engineer, showing estimates of the quantity of the work to be performed and that when the contractor received the bidding sheet he left the quantities the same as given by the engineer, and the prices per unit inserted and added up and entered in the contract, based upon the quantities as given by the engineer, and that after the contract was executed the engineer made measurements and submitted a final ascertainment of cost to the city authorities, and that sometimes the final ascertainment of cost exceeded, and sometimes it was less than the estimated cost based upon the preliminary estimate contained in the contract and that the unit price based on the final ascertained estimate of quantity governed in making the final payments.

It is obvious that the trial court in the instant case construed the contract in connection with the plans and specifications, bidding sheet and estimates submitted by the city engineer, and found that the contract was not based upon a lump estimate of the cost, but based upon an estimated unit price, and that since the contract was within the estimated unit price, a mere difference in quantity of the materials between the original estimate and the final measurement would not make the assessment void, so long as the contract price per unit was adhered to in the final calculation.

A careful examination of the record convinces us that the court committed no error in placing this construction upon the contract. If this had been a lump sum contract, as distinguished from a unit price contract, we can see no good reason for carrying into the contract the unit prices as shown by the plans and specifications, and in observing in minute detail in the proceedings leading up to the contract, the units of measurement and the prices per unit, as was done in the engineer's estimates of quantity and bidding sheet attached to the plans and specifications, and we do not think the provision in the contract that the contractor should receive for the work the sum of $19,915.92 necessarily inconsistent with the contract when taken and construed as a whole in the light of the surrounding circumstances, and in the light of the entire record.

There is no showing made of fraud or that the city of Ardmore was overreached

103—2

or misled in any manner by its being induced to rely upon a contract as a lump sum contract instead of a unit price contract. On the other hand, the record clearly shows, we think, that it had been the uniform practice in its paving contracts with A. L. Cook for the city of Ardmore to settle with the contractor for a unit price based upon final ascertained measurements of quantity, and that in some cases the final ascertained cost exceeded the amount extended in the contract based on the original estimate, and in some cases it was less.

The rule generally adhered to by the courts in the construing of contracts is laid down in the case of Kansas City Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 Pac. 639:

"The intention of the parties must be deduced from the entire agreement, and not from any part or parts of it, because, where a contract has several stipulations, it is plain that the parties agreed that their intention was not expressed by any single part or stipulation of it, but by every part and provision in it, considered together, and so construed as to be consistent with every other part."

To the same effect, see Fox v. Tyler, 109 Fed. 258; Brown et al. v. Coppadge et al., 54 Okla. 88, 153 Pac. 817; Union Trust Co. et al. v. Shelby Downard Asphalt Co., 55 Okla. 251, 156 Pac. 903; Watson v. Stone et al., 68 Okla. 33, 171 Pac. 336; Prowant et al. v. Sealey et al., 77 Okla. 244, 187 Pac. 235.

It is equally well settled, we think, that the construction placed upon a contract by the parties thereto may be looked to by the court in determining its construction. Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 27 Okla. 180, 111 Pac. 326; Rider v. Morgan, 31 Okla. 98, 119 Pac 958.

In the case of Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., supra, our court held:

"We are permitted to look at the construction placed upon the contract by the parties thereto and their acts under it in carrying same into effect in determining what the intention of the parties was as to its assignability at the time it was entered into."

And again, in the case of Wiebener et al. v. Peoples, 44 Okla. 32, 142 Pac. 1036, our court held:

"Where the language of a contract is uncertain and the parties thereto, by their subsequent acts and conduct, have shown that they construed it alike and within the

purview of the constructions permitted as possible by such language, the courts will ordinarily follow such adopted construction as the correct one."

Our conclusion is that the proper construction to be placed upon the contract in the instant case is to consider the specifications and bidding sheet and the estimate together with the proposal of the contractor in determining what was the true meaning of the contract, and when taken together the proper construction of the contract is that it was intended that the contractor should receive pay only for the work performed at the unit prices named in his proposal.

A case very similar to the one at bar was before the court in the case of City of Muskogee et al. v. Burford et al., 77 Okla. 174, 186 Pac. 949. In this case just as in the instant case, the case of Morrow v. Barber Asphalt Paving Co., 27 Okla. 248, 111 Pac. 198, was cited as authority for the proposition that the assessments were void because the aggregate cost of the improvements greatly exceeded the original estimates of the city engineer. In disposing of the contention, the court said:

"It is disclosed by the record that the street improvements involved were in improvement district No. 118, in the city of Muskogee; that the same were initiated under section 723, Snyder's Compiled Laws 1909, by two resolutions of the mayor and council, adopted respectively on November 21, 1910, and December 19, 1910, declaring the necessity for such improvements, each of which was in substantial compliance with such statute, and was published as required by law; and that within the time given, to wit, 15 days, no protest was filed. Thereafter on the 27th day of February, 1911, the mayor and council adopted a resolution to proceed with the improvements, such resolution being in all things, in substantial compliance with the provisions of the statute, and in pursuance of said resolution, the city engineer submitted to the mayor and council an estimate of the cost of such improvements together with plans and specifications, which were adopted by the mayor and council, and thereafter, in pursuance thereof, a contract was awarded for such improvements to Herman Construction Company, and such contract was entered into between the city of Muskogee and said contractor, under which contract the improvement was made and completed by the contractor, and that the mayor and council by proper resolution and ordinance caused the appraisement and apportionment of the ben-

efits to be made as required by law, and that a final estimate of the cost of such improvements was furnished by the city engineer, and that the contract price per unit for such improvements and payment therefor was awarded and the prices charged in the final estimate of the engineer did not exceed the prices stipulated in the engineers' estimate of the cost thereof, but that the total cost of such improvement as approved by the mayor and council and for which assessments and bonds of the city were caused to be issued, did exceed the original estimate of the city engineer to the amount of approximately 20 per cent.

"These facts were clearly established by the great weight of the evidence, and in fact, practically without dispute, and the plaintiffs' principal contention urged, is that the judgment of the trial court should be sustained because the aggregate cost of such improvements greatly exceeded the original estimate of the city engineer, and cite in support of such contention the decisions of this court in the cases of Morrow v. Barber Asphalt Co., 27 Okla. 248, 111 Pac. 196; City of Muskogee et al. v. Nicholson et al., 69 Okla. 273, 171 Pac. 1102; Flanagan v. City of Tulsa et al., 55 Okla. 638, 155 Pac. 542, which were paving cases, and the case of McGrew v. Kansas City , 64 Kan. 61, 67 Pac. 438; Scott v. Hines, 50 Minn. 204, 52 N. W. 523; and Lebberman v. City of Milwaukee, (Mich.) 64 N. W. 112. The facts in these cases are clearly distinguishable from the facts in the instant case, and it is so apparent from an examination of these cases that we deem it unnecessary to discuss them in this opinion."

The language of the court in the above opinion makes clear to our minds that the cases of Bowles v. Neely, Mayor, et al., 28 Okla. 556, 115 Pac. 344; Morrow v. Barber Asphalt Paving Co. et al., 27 Okla. 247, 111 Pac. 198, and Union Trust Co. et al. v. Shelby Downard Asphalt Co., 55 Okla. 251, 156 Pac. 903, relied upon by the defendants, have no application to the facts in the instant case.

Having arrived at the conclusion that the construction placed upon the contract by the trial court was correct, it follows that assessing ordinance No. 487 was not void, and that the permanent injunction was properly denied.

For the reasons stated, the judgment of the trial court is affirmed.

By the Court: It is so ordered.