[Civ. No. 7879. Third Dist. July 5, 1951.]

S. M. McGAW et al., Respondents, v. MASTER CRAFT HOMES (a Corporation) et al., Appellants.

MASTER CRAFT HOMES (a Corporation), Appellant, v. S. M. McGAW et al., Respondents.

Courtney L. Moore, Partridge & O'Connell for Appellants.

Jones, Lane & Weaver, Overton, Lyman, Prince & Vermille, Chadeayne & Wilkinson for Respondents.

THE COURT.—S. M. McGaw and W. S. Good, contractors and copartners, doing business as S. M. McGaw Company, filed action No. 43247 against Master Craft Homes, Goheen Construction Company, Marin Capital Company, corporations, and a number of fictitious defendants, to foreclose a mechanic's lien.

Master Craft Homes filed action No. 43525 against S. M. McGaw Company and the partners thereof, Howes and Whitaker, copartners, Goheen Construction Company and Marin Capital Company, asking for a declaration of rights and to determine future liability under contracts.

The two actions were consolidated for trial and the appeals from the judgments in both cases have been consolidated.

### Appeal in Mechanic's Lien Action

In this action the court found that prior to August 13, 1946, appellant Master Craft Homes was the owner of a portion of a subdivision commonly known as Seven Oaks Addition No. 1 in the city of Stockton; that pursuant to ordinance, Master Craft Homes entered into an agreement with the city of Stockton whereby Master Craft Homes was permitted to improve the subdivision by the installation of streets, street paving, curbs, gutters and sidewalks by private contract, subject to the ordinance and to the satisfaction of the city engineer; that in preparing to make the improvement, Master Craft Homes employed Howes and Whitaker, licensed engineers, to do the engineering work, and to draw plans for such improvement; that said engineers and Master Craft Homes procured from the city engineer's office the city's standard forms for specifications for street work; that thereafter said engineers submitted the plans and specifications to the city for approval; that at that time the city engineer's office discovered the quantities of material set forth in the specifications were in error and not sufficient to cover the area shown on the plans; that the city engineer pointed out said errors to Master Craft Homes and its engineers; that thereafter Master Craft Homes submitted said plans and specifications to S. M. McGaw Company, requesting that they make a bid for doing the work described in the plans and specifications; that Master Craft Homes so submitted the plans and specifications to S. M. McGaw without correcting the errors as to the quantities required; that the specifications so furnished to S. M. McGaw Company on which to bid were standard forms of specifications used by

the city of Stockton, furnished by the city of Stockton to Master Craft Homes, which provided, among other things:

" . . . It is the intent of these specifications to provide for the proper construction of the work herein referred to and it is understood that the contractor agrees to furnish everything necessary for the construction of the work notwithstanding any errors or omissions in the plans or specifications. The work shown upon the plans and not mentioned in the specifications or vice versa shall be done the same as if shown on both.

. . . . . . . . . . . .

"Bidders must examine and judge for themselves as to the location of the proposed work and satisfy themselves as to the nature, character and quantity of the labor and materials required to build the completed work, by a personal examination of the plans, specifications and location of the work.

"The plans for the work show conditions as they are supposed or believed by the City Engineer to exist, but it is not intended or to be inferred that the conditions as shown thereon constitute a representation by the City, or its officers that such conditions are actually existent, nor shall the City nor any of its officers be liable for any loss sustained by the contractor as a result of any variance between conditions as shown upon the plans and the actual conditions revealed during the progress of the work or otherwise."

The court further found that S. M. McGaw Company, prior to making the bid and prior to entering into the contract, did not examine or judge for themselves as to the quantities of the labor and materials required to build the completed work; that thereafter S. M. McGaw Company completed the bid form furnished by Master Craft Homes and submitted a bid based thereon; that said bid form contained the erroneous quantities of labor and materials required, which erroneous quantities were set forth in the specifications by Master Craft Homes, as aforesaid; that thereafter, on or about August 13, 1946, S. M. McGaw Company and Master Craft Homes entered into an agreement in writing whereby S. M. McGaw Company agreed to furnish the labor and material and to construct, lay, place and install for Master Craft Homes certain works, to wit: Excavation and fill, street paving, curbs, gutters, sidewalks and grading in said subdivision upon the streets, lots and blocks designated upon the plans showing said work; that Master Craft Homes agreed to pay S. M. McGaw Company for such

work of construction at the rates per unit of cubic yards, square feet and linear feet set forth after each specific item contained in the written agreement; that after the execution of the agreement a change was made in the grade of certain streets, and by mutual consent it was agreed that S. M. McGaw Company should be compensated for the extra grading and· fill required by the change of grade, in the sum of $4,829.40; that the written agreement set forth and described the erroneous quantities contained in the specifications, as aforesaid; that the quantities set forth in the written agreement were not sufficient to cover the area to be improved as shown upon the plans for the work of improvement; that the written agreement, by reference thereto, incorporated the plans and specifications, and the agreement further provided: ''That notwithstanding the fact that the work contemplated by this contract is divided into items in the next preceding paragraph the said work is to be treated as a unit contract and the said second parties agree to perform the whole thereof as one contract''; that S. M. McGaw Company have fully kept and performed the agreement in all the things to be by them kept and performed and have furnished to defendants and have installed grading and fill, paving, curbs, gutters and sidewalks in the quantities, for the price and of the values hereinafter set forth as follows, to wit:

| | |
|---|---:|
| 4875 cu. yd. of Excavation at 0.45¢ per cu. yd. | $ 2,193.75 |
| 4250 cu. yd. of Fill at 0.45¢ per cu. yd. | 1,912.50 |
| Extra excavation & fill by mutual agreement | 4,829.40 |
| 225,641.0 sq. ft. Asphalt | |
| Paving 2″ thick at 0.065 per sq. ft. | 14,666.67 |
| 225,641.0 sq. ft. Gravel Base, | |
| 4″ thick at 0.0525 | 11,846.15 |
| 7,527.6 Lineal Feet 7′ Combined Curb | |
| Gutter & Sidewalk at $2.90 | 21,830.04 |
| 2,455.8 Lineal ft. 8′ Combined Curb, | |
| Gutter & Sidewalk at $3.25 | 7,981.35 |
| 2,575.4 Lineal Ft. 2½′ Curb, Gutter at $1.60 | 4,120.64 |
| 2,380.90 Lineal Ft. 5′ Sidewalk at $1.40 | 3,333.26 |
| 463.0 Lineal Ft. 7′ to 8′ returns at $3.40 | 1,574.20 |
| 370.4 Lineal Ft. 7′ to 7′ returns at $3.25 | 1,203.80 |
| 205.8 Lineal Ft. 8′ to 8′ returns at $3.50 | 720.30 |
| 171.5 Lineal Ft. 8′ to 7½′ returns at $3.45 | 591.67 |
| 121.2 Lineal Ft. 6½′ to 7′ returns at $3.00 | 363.60 |
| Total | $77,167.28 |

The court went on to find further that the work of improvement and construction was commenced before Novem-

ber 4, 1946; that the sum of the items in said written agreement containing the erroneous statement of quantities as aforesaid was $59,498.64; that pursuant to the written agreement Master Craft Homes deposited $59,498.64 in Central Bank of Oakland, California, with instructions to pay same to S. M. McGaw Company in accordance with progress payment estimates, based upon the acceptance certificate of the city engineer; that after the work commenced and on or about May 13, 1947, at a time when the work required by the contract was only partially completed, the city engineer issued a progress payment estimate which showed on its face that there was a variance between the amount of work done and the erroneous quantities set forth in the specifications and the agreement; that said progress payment estimate was mailed by the city engineer to Master Craft Homes and to S. M. McGaw Company in accordance with the progress payment estimate, which showed that S. M. McGaw Company had completed and installed 866 lineal feet of 7' curb and gutters and sidewalks in excess of the amount set forth in the agreement and specifications; that notice of the excess came to S. M. McGaw Company and Master Craft Homes by means of said progress payment estimate made by the city engineer on or about May 13, 1947; that S. M. McGaw Company themselves did not give Master Craft Homes any notice that the quantities required to improve the area shown in the plans were in excess of the quantities set forth in the specifications or written agreement; that the total price of the work, labor and material so performed and furnished pursuant to the written agreement was the sum of $77,167.28; that at the time the action was commenced there had been paid on account the sum of $45,376.02; that pending the trial there was paid on account the further sum of $18,-951.98, leaving due, owing and unpaid the sum of $12,839.28; that S. M. McGaw Company have waived interest on all sums except on $12,839.28; that the whole of said Seven Oaks Addition, Unit No. 1, is required for the convenient use and occupancy of said streets, gutters and sidewalks and is benefited and improved thereby; that all the work was subject to acceptance by the city council; that the work was accepted by the city council on November 10, 1947; that payment of the total unpaid balance of $31,791.31 became due at the expiration of 35 days from November 10, 1947, to wit, on December 16, 1947; that at the date of the agreement of August 13, 1946, Master Craft Homes was the owner

and reputed owner of said lands; that defendants Goheen Construction Company and Marin Capital Company are successors in interest to Master Craft Homes and are the owners and reputed owners of a portion of the lands and they became such successors with actual notice of said agreement and of the work and construction; that on December 23, 1947, S. M. McGaw Company filed for record a notice of claim of lien upon said property in writing duly verified by S. M. McGaw, which notice is in all respects in the form required by law and in all respects in compliance and conformity with the contract; that the claim of lien was filed within 60 days after the work of contraction was accepted by the city council; that the action to foreclose the claim of lien was filed within 90 days of the filing of the notice of claim of lien, to wit, on March 9, 1948.

From the findings thus made, and which are amply supported by the record, the trial court concluded that S. M. McGaw Company were entitled to judgment against Master Craft Homes for $12,839.28 for work, labor and material, and against all three corporations defendant for $2.90 for verification and recording the claim of lien and for costs; that S. M. McGaw Company have a lien on the property for $12,841.18, together with interest and costs of suit, and that S. M. McGaw Company were entitled to a judgment of foreclosure of the lien on all the property.

All three corporate defendants have appealed from the judgment entered in accordance with said findings and conclusions, and have also appealed from the order denying their motion for a new trial and from the order denying their motions under sections 663 and 663a of the Code of Civil Procedure to set aside and vacate the judgment and enter another judgment.

Appellants make a number of contentions for a reversal of the judgment and orders, but their principal contention is that the evidence does not sustain the finding that the contract was an "item contract," but that the evidence shows that the contract was a "lump sum" contract. Appellants assert that the trial court not only failed to construe the contract correctly, but in effect made a new contract for the parties.

It is, of course, elementary that "it is the duty of a court to so construe a written instrument as to give force and effect not only to every clause but to every word in it, so that no clause or word may become redundant, unless such

construction would be obviously repugnant to the intention of the parties . . . or would lead to some absurdity." (6 Cal.Jur. 259.) And as stated in section 1858 of the Code of Civil Procedure: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained thereon, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

█ We have read the record carefully and it appears that the plans and specifications were prepared by Walter H. Chase, an engineer employed to do that work by Howes and Whitaker, and he also made the map of the project and omitted to include 8th street and thereafter the error was discovered and amendments included 8th street for which Master Craft Homes paid S. M. McGaw Company $4,829.40 aside from the main contract. Then Chase, while correctly delineating the area to be improved in the plans, erred in computing the quantities when making up the estimates in the specifications.

It also appears, as testified to by S. M. McGaw, that his company subcontracted much of the work to Stockton Construction Company and paid it $50,652.52, and he learned of the error shortly after the grading started. He later testified that he first learned of the error toward the end of the job; that some items ran under his bid by which Master Craft Homes benefited; that before bidding he read the plans and specifications but did not examine them for errors, and he never notified Master Craft Homes of any error or "overrun" until after the job was completed; that he learned of "overrun" about May 13, 1947, from Second Progress Estimate issued by the city engineer; then testified he did not know of overrun until final figures were furnished by the city engineer, and that the overrun could be determined by comparing the city engineer's progress estimate reports with original balance stated to be due.

Lyle Payton, Stockton city engineer, testified how "unit" and "lump sum" contracts are construed and that it is customary to bid on the "unit basis"; that a "lump sum" contract does not specify any units.

A reading of the contract reveals that the contractor agreed "to do all of the following work of construction and

to supply all labor, materials, tools and equipment therefor and for the prices set opposite each item as follows, to wit: 4,875.00 cubic yards of excavation at $0.45 per cubic yards . . . $2,193.75." Then follow the 14 items for units of work, each figured as above, and at the bottom a total of the items, $59,498.60.

The trial court stated in his memorandum opinion: "This itemized agreement follows the bid furnished to the bidder and indicates very clearly that the plaintiff, when he signed this agreement, undertook to do each item for a certain amount of money and no more. I am of the opinion that this special language controls over the incorporation of some equivocal language contained in the specifications furnished to the bidders. If Master Craft desired a lump sum contract it would have been very simple to provide that the contractor agreed to do the work according to the plans and specifications for the sum of $59,498.60. But this they failed to do, and I do not believe you could have a unit contract and also a lump sum contract in the same document.

"The paragraph following the above, 'that notwithstanding the fact that the work contemplated by this contract is divided into units in the next preceding paragraph, said work is to be treated as a unit contract and the said second parties agree to perform the whole thereof as one contract' creates no liability for extra work due to errors in the specifications. It merely means that the contractor will not divide the work up and do it piecemeal, but will perform the entire contract as a whole.

"The fact that plaintiff required the total of the units to be deposited in a bank before he commenced work indicates nothing more than a security transaction. It does not, in my opinion, indicate that he believed he was performing a lump sum contract."

It should be borne in mind that the contract, maps, plans and specifications were all prepared by Master Craft Homes and S. M. McGaw Company prepared none of the instruments, and the error in quantities was made by Howes and Whitaker, employed to draw the plans and specifications by Master Craft Homes. It must also be kept in mind that the erroneous quantities expressed in the specifications were insufficient to cover the project as delineated in the plans and as required by the city of Stockton. In other words, to do the job as contemplated and demanded by the city, the excess quantity claimed had to be supplied.

Also important is the fact that both parties received regu-

lar progressive estimates issued by the city engineer to the Central Bank upon which the bank made progressive payments, and these estimates showed the percentage of work done, the value thereof and balance. It is admitted that a careful reading of these estimates would reveal that the job was "overrunning" the quantities stated in the specifications and contract, but not in the plans, which plans showed the quantities upon which the city engineer issued the progressive estimates. Mr. Bell, vice president and general manager for Master Craft Homes testified that Master Craft Homes must have received the progressive estimates but he did not examine them nor did he see them. Of course his failure to see or examine them when received at his office was his own negligence. He also made the statement that he did not check nor even read the plans and specifications because he relied on his engineers, Howes and Whitaker.

We believe that the trial court was correct in its conclusion that the contract was a "unit contract" and not a "lump sum" contract and that respondents were entitled to be paid for the amount of actual work installed at the unit price.

A case closely in point is *Frazer* v. *City of Ardmore*, 103 Okla. 31 [229 P. 143]. In that case, the city approved plans and specifications and estimates for street paving, detailing therein the quantities of the several items necessary to go into the improvement together with the cost per item, amounting in the aggregate to the sum of $20,076.51. Upon the approval of these plans and specifications, bids were called for and the contractor inserted on the bidding sheet opposite the estimated quantities the price per unit at which he would offer to do the work. These figures were extended on the bidding sheet so that they amounted in the aggregate to the sum of $19,915.92. A contract was entered into between the city of Ardmore and the contractor by the terms of which the contractor agreed to perform the work and improvements in accordance with the plans and specifications on file in the office of the city clerk. The specifications were made a part of the contract and contained a provision that the contractor should receive the sum of $19,915.92. When the work was completed the engineer submitted the ascertained cost for the completed improvement showing the actual quantities and the price per unit as given in the contract, the total of which .amounted to the sum of $23,730.14. The contractor was compelled to sue for the difference between the total sum of his bid in the amount of $19,915.92 and the

total cost of the items actually installed as shown by the engineer's report in the amount of $23,730.14. The trial court held that the unit prices based upon the final ascertained estimate of quantity as determined by the engineer governed in making the final payment. In affirming the judgment the appellate court said, pages 144-145:

"A careful examination of the record convinces us that the court committed no error in placing this construction upon the contract. If this had been a lump sum contract, as distinguished from a unit price contract, we can see no good reason for carrying into the contract the unit prices as shown by the plans and specifications, and in observing in minute detail in the proceedings leading up to the contract the units of measurement and the prices per unit, as was done in the engineer's estimates of quantity and bidding sheet attached to the plans and specifications, and we do not think the provision in the contract that the contractor should receive for the work the sum of $19,915.92 necessarily inconsistent with the contract when taken and construed as a whole, in the light of the surrounding circumstances, and in the light of the entire record.

. . . . . . . . . . .

"Our conclusion is that the proper construction to be placed upon the contract in the instant case is to consider the specifications and bidding sheet and the estimate together with the proposal of the contractor in determining what was the true meaning of the contract, and when taken together the proper construction of the contract is that it was intended that the contractor should receive pay only for the work performed at the unit prices named in his proposal."

Another case to the same effect is *City of Hobart* v. *Dailey,* 170 Okl. 107 [39 P.2d 44]. In that case the contractor made a bid showing the total price and further showing that it was computed upon items of so much a square yard and cubic yard. In that case the engineer's report on the quantities actually installed shows that the quantities actually used on the job were less than the quantities stated in the bid and the city paid only on the basis of the actual quantities installed. The contractor attempted to recover on the basis of a lump sum contract and did recover judgment in the lower court. Upon appeal the judgment was reversed, the court following *Frazer* v. *City of Ardmore, supra,* and stating at page 46:

"The above rule is applicable to the case under consider-

ation, and in our opinion the contract is not susceptible of any reasonable construction other than that the contractor was entitled to compensation on the unit price basis. The plans and specifications, as well as the notice to the contractors, called for bids on a unit price basis, and as we construe the contract the plaintiff's bid was made on that basis.'' And as was said in the case of *Platte Valley Ditch & Reservoir Co.* v. *H. C. Lallier Construction & Engineering Co.*, 91 Colo. 317 [14 P.2d 1079, 1081], by the Supreme Court of Colorado in 1932: ''If it had been the intention of the engineer to fix a lump sum price for the entire work and the materials furnished, it was a superfluous thing for him to use the title: 'Quantities and unit prices' for the work of construction. If the defendant corporation, through its engineer, intended to fix a lump sum price for the entire work and materials, such language as 'Quantities and unit prices' would not have been inserted in the contract, as they would be inconsistent therewith.''

Appellants contend further that ''there is a fatal variance between the contract set forth in the Notice of Lien and the contract as found by the Court.'' We find no merit in this contention. The claim of lien as filed recited that the amount of the contract price was $59,468.20, and that extras furnished on said job of construction were in the sum of $17,668.73. Appellants argue that there was no express contract for extras and that no contract can be implied from the facts. But, as appellants themselves assert in their brief that respondents were obligated to perform all of the work covered by the plans, it is difficult to understand why they should be precluded from including the amount of work performed and furnished in addition to the amount of the items specified in the contract.

Section 1203 of the Code of Civil Procedure provides: ''No mistake or errors in the statement of the demand . . . shall invalidate the lien. . . .'' And in *Stone* v. *Serimian*, 198 Cal. 520, 523 [246 P. 45], in which said section 1203 was referred to, the court said: ''While the claim of lien does not contain an exact or correct statement of the agreed terms of payment, . . . The claim of lien was, therefore, not invalidated by the erroneous statement.'' Furthermore, section 1187 of the Code of Civil Procedure does not make the requirement complained of here material to the validity of the claim of lien. In the case of *Baird* v. *Ocequeda*, 8 Cal.2d 700 [67 P.2d 1055], the court said at page 703: ''The trial court found all of

the allegations of the complaint as amended to be true. Defendants urge that the effect of this is to permit plaintiff to recover on asserted inconsistent theories of express and implied contract. Even if this should be conceded, it is not fatal to the judgment. Examination of the record discloses that there is evidence to support a recovery on either theory. This being so, the findings on the inconsistent theory may be disregarded as surplusage. (*Epstein* v. *Gradowitz,* 76 Cal. App. 29, 31 [243 P. 877].) It is immaterial that the claim of lien is based solely on an express contract for under section 1187, *supra,* as it now reads, it is not necessary for the lien claimant to state in the claim of lien 'the terms, time given and conditions of his contract.' The quoted provision has been deleted from the section for many years and cases decided under the law as it formerly read are not in point."

Appellants contend also that the claim of lien was filed too late and that therefore the complaint must be dismissed. There is no merit in this contention. Section 1191 of the Code of Civil Procedure provides: ". . . in cases where the improvement made or work done is subject to acceptance by any municipal board or officer, the time for filing claims of lien shall not commence to run until after such acceptance shall have been made."

The city accepted the work on November 10, 1947 (Plaintiffs' Ex. No. 23) and under section 1187 of the Code of Civil Procedure the contractors had 60 days from November 10, 1947, within which to file their claim, and the claim of lien was recorded December 23, 1947 (Defendants' Ex. No. F).

The delay in acceptance by the city council was thus explained by the city engineer, Lyle Payton: "Well, it's the practice of the City Engineer's Office not to issue the final certificate to the Council until the owner has paid the—to the City the engineering fee. A bill was rendered to Master Craft on August 5th but it wasn't paid by them until October the 3rd."

Furthermore, the contract between Master Craft Homes and the city (Plaintiffs' Ex. No. 1) provided that the work was to be done "under the provisions of Ordinance No. 433 . . .," and section 4, paragraph 3, of the ordinance (Plaintiffs' Ex. No. 3) provides as to all street work done by private contract that "the said Council may accept the same in the manner by law provided." Under section 3 of the ordinance the work must be done to the satisfaction of the council.

Therefore, it is clear that the delay in acceptance by the council was the result of the fault of Master Craft Homes in failing to pay the fees as per its contract with the city and that the notice of claim of lien was filed in time.

No other points raised by appellants upon this appeal require discussion.

### Appeal in Declaratory Relief Action

Master Craft Homes, a corporation, commenced this action for declaratory relief, joining as defendants S. M. McGaw Company, the contractors, Howes and Whitaker, the engineers, Goheen Construction Company and Marin Capital Company, seeking to have the court in said action determine the rights, duties and liabilities of the various defendants with reference to the mechanic's lien and the contracts. The facts are substantially as set forth in our discussion of the appeal in the mechanic's lien case.

In this case the court found:

"That said Howes & Whitaker have fully and completely performed each and all and every term, condition and covenant on their part to be performed under and pursuant to said oral contract *except they negligently and erroneously estimated the quantity of work required* and that plaintiff has sustained no damage by reason of having entered into said contract or the performance thereof."

The trial court in its memorandum opinion said:

"In reference to Master Craft's claim against Howes & Whitaker, the evidence indicates negligence upon the part of the latter in the preparation of the tabulation for the estimations of the amount of work and material necessary to perform the contract. Master Craft, however, was bound by contract with the City to construct the subdivision in accordance with the plans submitted. There is no evidence in the record to the effect that the subdivision could have been constructed for any less sum of money than plaintiff did it for. Nor is there any evidence in the record indicating any financial loss suffered by Master Craft by reason of Howes & Whitaker's mistakes. True they must pay more than they expected to pay, but no more than they should pay."

Master Craft Homes has appealed from the judgment that it take nothing against any of the defendants in said declaratory relief action, and contends that the court erred in holding that it did not suffer any damage as a result of Howes and

Whitaker's negligence and carelessness. Appellant argues correctly that with negligence found by the trial court the sole question to be decided is whether or not appellant suffered any damage as a result of Howes and Whitaker's error.

Appellant argues further that the portion of the finding that Master Craft Homes suffered no damage disregards the fact that it suffered damage in the amount of the judgment obtained by McGaw Company. But, if, as we have hereinbefore held, the agreement between Master Craft and McGaw is a contract for which payment is to be computed on a unit basis, then appellant Master Craft would be paying for nothing more than what it agreed to pay for, and would consequently suffer no legal damage in that respect.

While it is not difficult to understand that appellant might well have been damaged by the error of Howes and Whitaker, the trial court found that no damage resulted to appellant, and appellant has not been able to point out any evidence in the record upon which a finding of damage could be predicated. Although it is not incumbent upon us to search the record to find evidence contrary to the finding of the trial court, we have read the record carefully and find no such evidence.

In view of the foregoing the judgment and the order denying defendants' motion to set aside and vacate the judgment in action No. 43247, the mechanic's lien action, are affirmed. The judgment in action No. 43525, the declaratory relief action, is affirmed. The orders denying a motion for a new trial in each case being nonappealable, the appeals therefrom are dismissed.

A petition for a rehearing was denied August 1, 1951, and appellants' petition for a hearing by the Supreme Court was denied August 30, 1951. Spence, J., voted for a hearing.